FILED

11 MAY 25 AM 11:33

CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

BY: [signature] DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. ADAMS, Plaintiff, v. ALLIANCEONE, INC., Defendant. | No. 08-CV-248-JAH(WVG) **ORDER DENYING REQUEST TO IMPOSE MONETARY SANCTIONS** [Doc. No. 89] |

Plaintiff requests the imposition of $17,076.06 in sanctions against Defendant for alleged discovery abuses related to the form of production of electronic documents and witnesses produced for Rule 30(b)(6) depositions. Based on the parties' briefing, oral arguments, and relevant case law, the Court declines to impose sanctions.

## I. BACKGROUND

Filed on February 8, 2008, this case was transferred to the undersigned's caseload on October 21, 2009, after The Honorable Leo S. Papas retired. On May 28, 2010, The Honorable John A. Houston granted the first of three successive stays that expired in September 2010. Between October 2009 and May 28, 2010, the parties

came to the Court with discovery disputes on several occasions. A summary of those events follows.

On December 9, 2009, Plaintiffs submitted a discovery status report as the Court had requested. (Doc. No. 58.) The parties reported that they had met, conferred, and come to agreements on disputed discovery that Defendant had not produced. First, Defendant agreed to provide further supplemental responses to four sets of written discovery. Second, Defendant agreed to produce outstanding documents in response to Plaintiff's prior requests. Specifically, Defendant was to provide "the documents containing any written record of the putative class members providing their cell phone numbers" to Defendant. This discovery related to a key point of contention between the parties, as it directly bore on whether the putative class members provided "prior express consent," which in turn bore on whether a class would be certified. Nonetheless, Defendants did not agree to provide certain other documents related to the "express prior consent" issue because Plaintiff's discovery requests were not broad enough. To remedy this, Plaintiff was to propound supplemental discovery requests that included these documents. The parties reported that they were working through their disagreements and Court intervention was not necessary at that time.

On January 11, 2010, Plaintiff submitted an updated status report. Plaintiff reported that Defendant's previous cooperation had ceased:

> Surprisingly, and contrary to what Plaintiff's counsel was told would be provided in discovery prior to that December 9, 2009 Status Report, almost all of the items Defendant promised to provide in discovery in the prior Status Report, simply have not been provided, including the

> supplemental discovery responses, and the requisite verifications. . . .
>
> In addition, Defendant is now refusing to provide discovery long ago requested asking for evidence it has, including all documents, relating to its primary affirmative defense of "prior express consent" it claims it has to permit its calls to cell phones. Defendant is basing its new refusal (since the pre-Status Report agreement) on what it now claims to be an ambiguity in the discovery request and/or Magistrate Judge Brooks' Order on discovery (it is uncertain exactly where the basis of the claimed ambiguity lies).
>
> Plaintiff will now be forced to bring yet another motion to compel discovery, despite believing in her prior Status Report that Defendant was finally going to provide the prior discovery requested. Also, as the Court may recall, Defendant repeatedly complains in its briefs about Plaintiff's failure to "diligently" seek any necessary extension of the Court's Scheduling Order. However, Plaintiff must now seek by motion such an extension of the existing February 12, 2010 discovery deadline because of Defendant's failure to provide even the promised discovery to date.

(Doc. No. 60 at 2.)[1]

In response, the Court set a telephonic status conference for February 18, 2010, and set a briefing schedule. (Doc. No. 62.) In her brief, Plaintiff essentially argued that Defendant was at times stonewalling, while at other times agreeing to provide discovery but then reneging and asserting new arguments for withholding documents. (Doc. No. 65.) The net result was Defendant's failure to produce relevant information and documents despite multiple meet and confer efforts and the Court's previous intervention. For its part, Defendant argued that Plaintiff was attempting to obtain information about each putative class member before class notice had been sent. (Doc. No. 66.) Defendant further argued that it had incurred $75,000 in discovery costs and requested cost shifting. At the hearing, Defendant argued that Judge Brooks's earlier order compelling production of documents was limited to only 3,000

[1] All page references to documents on the Court's docket are the CM/ECF renumbered pages, not to the document's native pagination.

putative class members. The Court disagreed with Defendant's interpretation of the order and ordered further responses by Defendant. (Doc. No. 68.) Defendant also voluntarily agreed to provide verified responses to thirteen special interrogatories. (Id.)

On March 9, 2010, the Court held a status conference to monitor Defendant's compliance with the Court's order. The Court discovered that, rather than comply with the order, Defendant had filed a summary judgment motion and accompanying motion to stay class discovery. (See Doc. Nos. 72, 73.) Defendant resisted further class discovery on grounds that a grant of its summary judgment motion would vitiate the need for the discovery. After consideration, the Court denied Defendant's motion to stay discovery, again ordered Defendant to produce documents, and warned Defendant of the consequence of not complying. (Doc. No. 78 at 7.) The Court wrote:

> [T]his Court's ruling of February 23 [Doc. No. 68] stands. Defendant is further ordered to produce documents regarding its prior express consent affirmative defense. While several months may pass before Judge Houston rules on Defendant's motion, this Court will not further permit any discovery delays. This case has suffered through stagnant discovery for nearly two years. Discovery shall close on April 12, 2010. Defendant will not be permitted to further drag out the clock in delaying document production to Plaintiff. All documents regarding prior express consent must be produced to Plaintiff by April 2, 2010. Any failure to produce documents evidencing prior express consent to Plaintiff, will result in sanctions against Defendant.

(Id. (underlying in original).)

On April 12, 2010, without complying with the Court's orders, Defendant requested a hearing to resolve a discovery dispute it had with a third party, on which Defendant had served a subpoena. The Court held the hearing on the record on April 20, 2010, and first

heard argument on Defendant's dispute. After dismissing the third party's representatives, the Court addressed Defendant's continuing failure to comply with its discovery orders:

> The Court: I also have in my possession a document that was filed by Mr. Campion and Mr. Swigart on behalf of the Plaintiff alerting the Court - it was filed yesterday - alerting the Court that they're not getting anything from you, Mr. Hall,[2/] and you're not returning phone calls, emails, letters . . . it's as if you have fallen out of the face of the planet when it comes to this particular lawsuit and responding to Mr. Campion and Mr. Swigart. So what gives? What's up with that?
>
> Mr. Hall: Your honor, unfortunately, that that is my fault, um . . . I I . . . at this time, I really can't give the Court an explanation that I I don't [sic] think would satisfy you. The only thing I can say is I was waiting to get all the verifications done before I sent everything out.

The Court informed Defendant in clear terms that this explanation was not acceptable. Counsel's explanation was suspect, *inter alia*, because, as Plaintiff's counsel noted, Defendant had previously disputed whether verifications were necessary in federal court but was then itself using verifications as justification for delay. The Court noted that this was not the first time this issue had arisen, and advised counsel that the Court was seriously considering sanctions for Defendant's "very lackadaisical, irresponsible approach to discovery." The Court requested that the parties file two-page statements regarding sanctions.

At the April 20, 2010, hearing, Plaintiff also for the first time notified the Court that Defendant had produced documents in a format that made them exceedingly difficult to analyze. Apparently, Defendant had previously provided data in a searchable electronic

---

2 Counsel for Defendant.

format called comma-separated value ("CSV"),[3] but this time had taken the extra step of converting the searchable documents into non-searchable Portable Document Format ("PDF") files, which essentially made them "useless" to Plaintiff.[4]

On April 23, 2010, Plaintiff filed a five-page statement that laid out the history of Defendant's conduct both before and after the case was transferred to the undersigned. (Doc. No. 89.) Plaintiff then requested sanctions be entered because (1) Defendant had produced documents in PDF format and (2) the persons produced for depositions had insufficient knowledge. (Id. at 4-6.) Plaintiff informed the Court that she had deposed three of Defendant's representatives regarding the "consent list" that contained 9.1 million telephone numbers which Defendant claimed defeated class certification. Plaintiff had noticed the depositions to determine the process used to include the 9.1 million telephone numbers on the consent list. "However, none of the three PMKs produced for deposition . . . knew about or had anything at all to do with the process of determining whether a number was put on the consent list. They were essentially handling ministerial tasks of pulling the database and forwarding it to a consultant who apparently made all the decisions on inclusion." (Id. at 6.) Plaintiff claimed that Defendant's delay in responding to her interrogatories caused it to needlessly depose these three people. "Had those answers been

---

[3] For a general overview of the CSV format, see Comma-separated values, http://en.wikipedia.org/wiki/Comma-separated_values (last visited May 18, 2011).

[4] Searchable files would have allowed Plaintiff to easily seek out information. The converted, non-searchable documents apparently made Plaintiff's task exponentially more difficult.

timely provided, or had defense counsel so advised before the depositions, those depositions would have been unnecessary." (Id.)

In its defense, Defendant stated that it had expended more than $100,000 on discovery and had produced roughly 33 gigabytes (or 25 million pages) of data on April 2, 2010. (Doc. No. 90.) However, Defendant did not have an opportunity to address Plaintiff's statement regarding the alleged unprepared deponents.

On April 30, 2010, Judge Houston granted the parties' joint motion to stay all proceedings to give the parties an opportunity to settle the matter.

On May 12, 2010, the Court informally wrote the parties to inform them that the Court believed monetary sanctions in the amount of $20,177.56[5] were appropriate. (Ex. 1 to instant Order.) These costs were related to "the [Rule] 30(b)(6) deposition of Defendant on April 21, 2010 and the unsearchable pdf documents Defendant produced to evidence prior express consent." (Id. at 1.) However, the Court delayed entering sanctions until Defendant had an opportunity to respond. The Court further noted that the case was stayed so the parties could settle the matter and stated: "If appropriate, the Court may consider Defendant's present efforts [to settle the matter] as mitigating its past discovery abuses." (Id. at 2.)

After May 2010, the stay was extended twice more and expired on September 10, 2010.

By the end of the September 2010, the parties had reached settlement in principle and were working through various issues

---

[5] Plaintiff has since revised this amount to $17,076.06. (Doc. No. 104-2 at 4.)

related to the settlement agreement and class notification. The Court requested that Defendant submit a response regarding its May 2010 sanctions letter.

On September 30, 2010, Defendant lodged with the Court a statement regarding the Court's May 2010 sanctions letter. (Ex. 2 to instant Order.) In response to the Rule 30(b)(6) issue, Defendant focused on the fact that outside consultants, rather than Defendant's employees, were primarily responsible for compiling the 9.1 million telephone number consent list. (Id. at 3.) As a result, Defendant argued, Plaintiff was precluded from discovering this information because the outside consultants were used to develop litigation strategy. (Id. at 3-4 (citing Fed. R. Civ. P. 26(b)(4)(B)).) Defendant argued:

> In this case, [Defendant] produced the persons most knowledgeable on the categories requested. Plaintiffs do not dispute they provided testimony concerning their knowledge and involvement in the subject matter of the deposition notice. The fact an undesignated, outside consultant has more information concerning compilation does not mean there was a violation of Rule 30(b)(6) and sanctionable conduct.

(Id. at 4.) Defendant further argued that one of the deponents, a Mr. Matthew Larson, did have the information Plaintiff sought and that fees for his deposition should not be awarded as a result. (Id. at 4.)

Defendant next argued that, although the PDF files it produced on April 2, 2010, were not searchable, they were technically responsive to the propounded discovery because some courts in the Ninth Circuit have deemed sufficient printed copies of electronic documents. Notably, Defendant did not address why it converted the searchable CSV files to non-searchable PDF files when (1) the files originally existed in searchable form and (2) the

documents that Defendant had produced in the past were in CSV format.

After Defendant's late September 2010 statement, the Court inquired about the status of settlement on at least five separate occasions. Each time, the parties reiterated that their settlement in principle remains in tact, and they are resolving complex class member notification and identification issues.

On February 11, 2011, the Court held a hearing on the record specifically to provide Defendant an opportunity to be heard on the sanctions issue. The Court also requested supplemental briefing, which both parties filed shortly after the hearing. (Doc. Nos. 104, 105.) A more detailed account of the parties' arguments appears below under the relevant section.

Although the parties have yet to formally inform the Court that settlement has been fully consummated, the Court nonetheless sees fit to revisit its May 12, 2010, sanctions letter.

## II. LEGAL STANDARD

There are two sources of authority under which a district court can sanction a party for discovery-related abuses: (1) the inherent power of federal courts to levy sanctions in response to abusive litigation practices and (2) the availability of sanctions under Rule 37 against a party who "fails to obey an order to provide or permit discovery." Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1337-38 (9th Cir. 1985); Fed. R. Civ. P. 37(b)(2)(C).

Under its "inherent powers," a district court may award sanctions in the form of attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644,

648 (9th Cir. 1997) (discussing sanctions against an attorney) (citation omitted). "This inherent power derives from the lawyer's role as an officer of the court which granted admission." In re Snyder, 472 U.S. 634, 643 (1985) (citations omitted). Under this inherent power, and unlike statutory sanctions provisions, the Court may sanction a "broad range of improper litigation tactics." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196 (9th Cir. 2003).

Before awarding such sanctions, the Court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." Id. (citation omitted); see also Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1219 (9th Cir. 2010). A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." Id. at 649 (internal quotations and citation omitted). "[A] finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.'" In re Itel Sec. Litig., 791 F.2d 672, 675 (9th Cir. 1986) (quoting Lipsig v. Nat'l Student Mktg. Corp., 663 F.2d 178, 182 (D.C. Cir. 1980) (per curiam)). "[S]anctions are justified when a party acts for an improper purpose -- even if the act consists of making a truthful statement or a non-frivolous argument or objection. In Itel, the improper purpose was the attempt to gain tactical advantage in another case." Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001) (citing Itel, 971 F.3d at 675.) The focus of the bad faith inquiry is the sanctioned

party's abuse of the judicial process. Id. (citing Roadway Express v. Piper, 447 U.S. 752, 765-66 (U.S. 1980), *superceded by statute on other grounds as recognized in* 749 F.2d 217, 222 n.4 (5th Cir. 1984)). The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." Id.

Moreover, "the amount of an inherent powers sanction is meant to do something very different than provide a substantive remedy to an aggrieved party. An inherent powers sanction is meant to 'vindicate judicial authority.'" Mark Indus. v. Sea Captain's Choice, 50 F.3d 730, 733 (9th Cir. 1995) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991).) Nonetheless, the amount of monetary sanctions based on attorneys' fees must be "reasonable." Brown v. Baden (In re Yagman), 796 F.2d 1165, 1184-85 (9th Cir. 1986) (reviewing a Rule 11 sanction but announcing a standard applicable to other sanctions as well), *amended on other grounds by* 803 F.2d 1085 (9th Cir. 1986).

## III. DISCUSSION

Defendant's sordid history described above notwithstanding, the main thrust of Plaintiff's request for sanctions centers on (1) the format in which Defendant produced its documents and (2) the ostensibly unprepared witnesses Defendant produced in response to Plaintiff's Rule 30(b)(6) deposition notice. The Court addresses each in turn.

### A. Conversion of Documents

The Court finds insufficient grounds to impose sanctions against Defendant for producing documents in PDF format.

1. **Legal Background**

Federal Rule of Civil Procedure 34 allows parties to request the production or inspection of documents. When documents are in electronic format, Rule 34 provides that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii).

Rule 34's 2006 Advisory Committee Notes are instructive, as they address nuances related to production of electronic documents or data:

> The rule recognizes that different forms of production may be appropriate for different types of electronically stored information. Using current technology, for example, a party might be called upon to produce word processing documents, e-mail messages, electronic spreadsheets, different image or sound files, and material from databases. Requiring that such diverse types of electronically stored information all be produced in the same form could prove impossible, and even if possible could increase the cost and burdens of producing and using the information. The rule therefore provides that the requesting party may ask for different forms of production for different types of electronically stored information.
>
> . . . .
>
> If the requesting party is not satisfied with the form stated by the responding party, or if the responding party has objected to the form specified by the requesting party, the parties must meet and confer under Rule 37(a)(2)(B) in an effort to resolve the matter before the requesting party can file a motion to compel.
>
> If the form of production is not specified by party agreement or court order, the responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form. . . . . The rule does not require a party to produce electronically stored information in

> the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

In other words, Rule 34 acknowledges that challenges might arise when dealing with the ever-changing landscape of electronic discovery and envisions a collaborative process by which parties can resolve disputes about the format in which such discovery is produced. Rule 34 also allows the conversion of documents or data if doing so would render it usable.

**2. <u>Plaintiff's Explanation For Producing PDF Documents</u>**

After hearing argument and reviewing Defendant's supplemental brief, there appears to be quite a disconnect between its tone and position in live court versus in writing. Defendant's brief is essentially an unapologetic assertion that it complied with the letter of the Federal Rules of Civil Procedure. On the other hand, before the Court, defense counsel was cordial and set forth rather helpful explanations that better explained the reasons for production of the documents in PDF format.

Counsel explained that the documents at issue were produced in PDF format substantially due to the proprietary software the data was stored in and also to better present the extracted data, which was "mush" after it was extracted from the proprietary software that belongs to third-party vendors. Moreover, because the data was contained in proprietary software, Defendant could not have simply

handed over the database and software to Plaintiff. As a result, Defendant brought in personnel from the third party software company to extract the data from the proprietary database. When the software was extracted, it was not organized in an easily-readable format. Counsel also emphasized that the raw data did not come out of its native system in a readily searchable format. Rather, although it existed in CSV format it was "formatted data of a non-linear nature," meaning that the raw data could not be uploaded into a database management software.[6] Moreover, on a computer screen, the data appeared as a line of disorganized text that ran across the screen. In other words, Defendant could have provided Plaintiff the raw data, but it could not be uploaded into a searchable database or viewed as an organized database.

In light of the disjointed nature of the data, counsel explained Defendant had two options. First, when printed, the data apparently appeared in an organized, readable format. So Defendant could have printed the data and produced it in paper form. Second, the raw data could be loaded into software that in turn re-formatted it into structured PDF files. The paper option was ruled out because the amount of data exceeded 20 million pages.

Counsel chose to produce the data in PDF format for various reasons. First, counsel contended that the PDF files were not useless, as commercially-available PDF conversion software, such as "Monarch,"[7] can extract data from PDF files into searchable database

---

[6] The distinction between this data and data previously produced in CSV format was that the previous data was in linear format, which could easily be loaded into database software.

[7] See, e.g., Monarch Pro, http://www.datawatch.com/_products/_monarch_pro.php (last visited May 19, 2011).

formats. Thus, counsel did not believe that the data had been rendered unsearchable. Next, counsel wanted to make sure that the data could be understood in an electronic format as well as be able to be extracted into a database if Plaintiffs chose to do so. The PDF format allowed for easy reading of the data on a computer screen as well as data extraction for database creation. And although counsel could have produced the data in paper format, which would have printed in easily viewable form, Defendant chose PDF production to allow Plaintiff to easily view the data on a computer screen. Essentially, counsel did not want to "drop raw data of an unformatted nature" onto Plaintiff and say "here, go figure it out." Finally, counsel noted that the data, in CSV format, would not have allowed Plaintiff to see what the data would look like as a trial exhibit unless Plaintiff printed each individual page. The PDF format allowed Plaintiff to see the data on the computer screen as it would look if it were printed.

Counsel further explained that once Plaintiff reviewed the PDF files and asked for re-production of the data in CSV format, Defendant complied and produced the data in the requested format. Plaintiff did not complain again.

**3. Sanctions Will Not Be Imposed**

The Court declines to impose sanctions for various reasons. First, Plaintiff did not specify that it wanted the disputed discovery in any particular format. Although the Court understands that Defendant had consistently produced documents in CSV format up to that time, neither Rule 34 itself nor the Advisory Committee Notes address the significance that the parties' history has on future production. To the contrary, the Advisory Committee Notes

strongly suggest that production of electronic data should be considered on a case-by-case basis because data may exist in a wide range of formats. To now find that Defendant's history of producing documents in CSV format bound it to continue to produce documents in that format would run counter to this reality. Because Plaintiff did not request the documents in CSV format, Defendant had the option to produce it in its native format or a reasonably usable format.

Second, it appears that Defendant in fact produced the information in a reasonably usable format. Once extracted from the proprietary third-party software that Defendant used, the data existed in a jumbled mess. Defendant did not believe raw data was a usable format and chose to produce it in a format that allowed Plaintiff to easily view data on a computer screen as it would appear when printed.

Third, the Advisory Committee Notes to Rule 34 indicate that a party may "translate" electronic files if doing so would allow the party to produce the data in a reasonably usable format. On balance, the Court finds that Defendant's "translation" of the CSV data to PDF format was not improper because it attempted to produce the data in a format it believed would be reasonably usable. Rather than produce raw data, Defendant believed PDF files would allow Plaintiff both to use the files as court exhibits and also to search the files with commercially available software such as Monarch.

Fourth, although the Advisory Committee Notes state that a party may not convert data to hamper its original search capabilities, insufficient evidence exists to suggest that Defendant converted the data to PDF format to hinder Plaintiff's ability to

search the data. Rather, as counsel explains, PDF files are searchable, and robust software exists that could have done so.

Finally, consistent with the guidance provided by the Advisory Committee Notes, the parties met, conferred, and resolved Plaintiff's initial objection to the PDF format. In the end, Defendant produced the data in CSV format, and Plaintiff was satisfied. Thus, the parties resolved the dispute without much fanfare.

Ultimately, the Court finds there is insufficient evidence that Defendant acted with willful intent to sabotage Plaintiff's pursuit of truth here. As a result, the Court declines to impose any sanctions in connection with the above dispute.

**B. Rule 30(b)(6) Depositions**

The Court finds insufficient grounds to impose sanctions against Defendant for designating its Rule 30(b)(6) witnesses.

**1. Legal Background**

Federal Rule of Civil Procedure 30 allows parties to direct deposition notices to organizations for the deposition of the "person most knowledgeable" or "PMK" on certain specified topics. This rule specifically requires that the subpoena "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The organization then has a duty to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Id. "The persons designated must testify about information known or reasonably available to the organization." Id.

Rule 37(b)(2) allows the Court to impose sanctions on a party that fails to obey a court order to provide or permit discovery.

Rule 37(d) allows the Court to impose sanctions where a party or person designated under Rule 30(b)(6) fails "to appear before the officer who is to take the deposition, after being served with proper notice." Fed. R. Civ. P. 37(d)(1)(A)(i). Producing an unprepared witness is tantamount to a failure to appear. Resolution Trust Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993).

**2. The Parties' Positions**

Plaintiff's PMK deposition notice included 13 enumerated topics. While some were very specific, most were expansive and complex. As just one representative example, topic 9 asked for the following:

> Information regarding or relating to all databases, outbound call lists, and other records in electronically searchable format, setting forth all calls [Defendant] made with and autodialer or with a prerecorded voice message, or had [Defendant's] agents and third party vendors make on [Defendant's] behalf, to all telephone numbers that are not contained in [Defendant's] list containing persons that provided to [Defendant] their prior express consent to be called on their cell phones, such list being the list provided to Plaintiffs [sic] counsel or the agents on or about February 19, 2010 and containing about 9.1 million cell phone numbers.

(Ex. B to Order.) Mr. Hall explained that, when faced with broad topics such as the one above, his general practice is to find the person(s) within his client's organization who has the most knowledge about the range of topics in the deposition notice. He does so because he cannot anticipate specific questions or topic areas when the deposition topics are broadly worded. Then, if the PMK he produced cannot address a specific topic, arrangements can be made for follow-up depositions of persons who could speak on the specific topics that came up during the deposition. Ultimately,

Defendant produced the 3 persons it believed had the most knowledge of the range of broad topics in Plaintiff's deposition notice.

Mr. Hall further explained that he did not object to the PMK notices on broadness or vagueness grounds because such blanket objections are generally disfavored by courts. He also believed that objecting would have delayed the process because the dispute would have to be mediated by the Court. Rather than object, he did his best to find PMKs who had the most knowledge of Plaintiff's topics.

For Plaintiff's part, counsel explained that the PMK deposition notice was broadly worded because he did not want to limit the scope of the deposition because he anticipated objections to questions that went beyond the scope of the specific topics listed in the deposition notice. Depositions are fluid and counsel wanted to keep the topics broad enough to encompass any topic that might have come up during deposition questioning.

**3. Sanctions Will Not Be Imposed**

To be sure, neither party can be faulted for their positions, as a split in authority currently exists on whether Rule 30(b)(6) requires a party to confine deposition questioning to matters designated in the deposition notice. FCC v. Mizuho Medy Co., 257 F.R.D. 679, 683 (S.D. Cal. 2009); see also Batts v. County of Santa Clara, 2010 U.S. Dist. LEXIS 19327, *6-*7 (N.D. Cal. Feb. 11, 2010). Further, even if questions are not limited to only the noticed matters, it is unclear whether a PMK's answers on unnoticed matters bind the corporation. When faced with this uncertain, unsettled law, Plaintiff certainly cannot be faulted for drafting broadly-worded topics. On the same token, however, Defendant cannot be

faulted for designating witnesses who may end up not satisfying Plaintiff. Faced with a broadly-worded deposition notice, Defendant cannot reasonably be expected to anticipate specific questioning and produce PMKs accordingly. The Court therefore accepts, without endorsing, Defendant's explanation for designating the witnesses it did, as well as Mr. Hall's explanation for how he intended to respond if Plaintiff posed questions on unanticipated matters. Ultimately, the Court cannot find that Defendant or Mr. Hall acted in bad faith and declines to impose sanctions.

## IV. CONCLUSION

The Rules wisely require that the party to be sanctioned receive notice and a hearing. In this case, while the Court found Defendant's briefing unconvincing, Mr. Hall's explanations at the hearing carried the day. Although, as highlighted above, the Court certainly is less than pleased with some of Defendant's past conduct in this case, the Court does not find that the imposition of more than $17,000 in sanctions is a just result here. While Defendant's past conduct certainly set the stage for Plaintiff's request for sanctions, there is insufficient evidence to conclude that Defendant willfully intended to obstruct the litigation process by producing documents in PDF format or when designating its Rule 30(b)(6) witnesses. Therefore, the Court declines to impose sanctions against Defendants or its attorneys and hereby withdraws its May 12, 2010, letter indicating that monetary sanctions were proper.

IT IS SO ORDERED.

Dated: May 25, 2011

Hon. William V. Gallo
U.S. Magistrate Judge

# EXHIBIT 1

# United States District Court for the Southern District of California

1118 Edward J. Schwartz U.S. Courthouse,
940 Front Street • San Diego, CA 92101-8923

William V. Gallo
U.S. Magistrate Judge

(619) 557-6384
Fax: (619) 702-9937

May 12, 2010

Dear Mr. Campion, Mr. Swigart, and Mr. Hall:

At our last discovery hearing, the Court raised the issue of sanctions against Defendant Alliance One for discovery abuses. While the Court does not find issue preclusion appropriate, it does find that a monetary sanction is proper.

At the Court's request, Plaintiffs' counsel provided the Court with a summary of costs and fees associated with the 30(b)(6) deposition of Defendant on April 21, 2010 and the unsearchable pdf documents Defendant produced to evidence prior express consent. Plaintiffs' counsel submitted a tally attributing $24,765.06 of expenses directly to Defendant's poor discovery practices. Of the $24,765.06 submitted, the Court finds $20,177.56 of the expenditures appropriate as sanctions against Defendant.[1] The total breaks down as follows:

| | | |
|---|---|---|
| Doug Campion: | 7.3 hours at $450/hr; | total $3,285.00; |
| Josh Swigart: | 16.1 hours at $355/hr; | total $5,715.50; |
| Hansen & Levy Forensics: | 31.5 hours at $250/hr; | total $7,875.00; and |
| Court Reporter Fees: | | total $3,302.06. |

The Court is not prepared to enter sanctions on the amount described above without input from Defendant. It is also noteworthy that the case is currently stayed until May 30, 2010 to allow the parties time

[1] Plaintiffs' counsel submitted a schedule of fees. Excluded from the sanction amount are instances of double counting where both Mr. Campion and Mr. Swigart billed. Specifically the Court excludes from Mr. Campions fees the following:

- April 12, 2010 calls to J. Swigart and J. Hansen regarding documents produced - $630;
- April 20, 2010 calls to Josh Swigart re: efforts to read and search documents - $180;
- April 21, 2010 preparation and attendance at 30(b)(6) deposition - $3,600; and
- April 22, 2010 meeting with J. Swigart regarding discovery issues - $225.

Excluded from Mr. Swigart's total was the April 22, 2010 meeting with Doug Campion regarding discovery issues totaling $177.50 in fees. All other figures submitted were appropriate to issue as sanctions.

to work towards settling the case. If appropriate, the Court may consider Defendant's present efforts as mitigating its past discovery abuses. The Court requests Mr. Hall to address the Court regarding the propriety of sanctions against Defendant no later than June 1, 2010.

DATED: May 12, 2010

Hon. William V. Gallo
U.S. Magistrate Judge

# EXHIBIT 2

Hugh A. McCabe, SBN 131828
David P. Hall, SBN 196891
Alan B. Graves, SBN 243076
NEIL, DYMOTT, FRANK,
MCFALL & TREXLER
A Professional Law Corporation
1010 Second Avenue, Suite 2500
San Diego, CA 92101-4959
**P** 619.238.1712
**F** 619.238.1562

Attorneys for Defendant
ALLIANCEONE RECEIVABLES MANAGEMENT, INC.

Received in Chambers
SEP 30 2010
Hon. William V. Gallo

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CHRISTINA M. ADAMS AND SARAH GABANY, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

vs.

ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,

Defendant.

CASE NO. 08 CV 0248 JAH WVG

ALLIANCEONE RECEIVABLE MANAGEMENT, INC.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE SANCTIONS

Hon. William V. Gallo
Ctrm: F

Defendant AllianceOne Receivable Management, Inc. ("AllianceOne"), by and through its attorneys of record, submits this Response to the Court's May 12, 2010 Letter to Show Cause on the issue of monetary sanctions (the "May 12th OSC").

///

///

///

# I. INTRODUCTION.

As the Court is well aware, this is class action case for alleged violations of the Telephone Consumer Protection Act brought by Christina Adams and Sarah Gabney (collectively "Plaintiffs"). AllianceOne denied the claims.

At the tail end of the case, Plaintiffs served a deposition notice which requested 13 different areas. Ex. A, Decl. D. Hall. These witnesses were originally unavailable and the depositions were continued to April 21, 2010 by agreement.

In the meantime, the Court requested a two-page written statement from each of the parties concerning AllianceOne and the issue of sanctions. On April 23, 2010, AllianceOne submitted its two page brief, but Plaintiffs submitted five page response which complained about searchable nature of the production and the depositions of AllianceOne's persons most knowledge.

The Court issued its May 12th OSC which states in part "[a]t the Court's request, Plaintiffs' counsel provided the Court with a summary of costs and fees associated with the 30(b)(6) deposition of Defendant on April 12, 2010 and the unsearchable pdf documents Defendant produced to evidence prior express consent." May 12th OSC, pg. 1. Notably, the Court made no finding that AllianceOne's prior production was not in compliance with its prior orders. The Court's May 12th OSC also notes "[i]f appropriate, the Court may consider Defendant's present efforts as mitigating its past discovery abuses."

AllianceOne and Plaintiffs jointly requested a stay of the case to allow for full opportunity to settle the case. The stay was continued for various issues. AllianceOne and the Plaintiffs engaged in two days of mediation with Justice Howard Weiner, Ret. in an

effort to settle the case. Decl. D. Hall ¶ 5. As a result of the mediation process, the parties have agreed to the basic terms of complete settlement. *Ibid.*

The only remaining issue is how the costs for class notice will be paid. *Id.* ¶ 6. Although it is normally Plaintiffs' burden to pay the cost [*Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009)], AllianceOne and Plaintiffs are working together to allow the settlement proceeds to be used for class notice. *Ibid.* This is the only remaining issue to be resolved. Despite this progress, the Court requested AllianceOne's response to the May 12th OSC.

## II. THE 30(B)(6) DEPOSITIONS.

The first issue in the May 12th OSC concerns costs and fees associated with the 30(b)(6) depositions on April 21, 2010. Of the requested amount, approximately $7,551 in attorney's fees and $5,552.06 in costs are sought with the associated with the 30(b)(6) depositions.

Plaintiffs' prior statement contends "none of the three PMKs produced for deposition two days ago knew anything about or had anything at all to do with the process of determining whether the number was put on the consent list. They only were essentially handling the ministerial tasks of pulling the database and forwarding to a consultant who apparently made all the decisions on inclusion." Pl.'s Statement pg. 5, lines 4-8. "It was clear the compilation was done by *outside consultants*." *Id.*, pg. 5, lines 13-14 [Emphasis added].

Plaintiffs overlook the fact that AllianceOne did not designate its consultants as experts and did not expect to call them witnesses. Decl. D. Hall ¶ 4. "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert

who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R.Civ. P. 26(b)(4)(B).[1] Plaintiffs were, therefore, precluded from deposing AllianceOne's consultant or engaging in the discovery regarding their known facts or opinions.

In this case, AllianceOne produced the persons most knowledgeable on the categories requested. Plaintiffs do not dispute they provided testimony concerning their knowledge and involvement in the subject matter of the deposition notice. The fact an undesignated, outside consultant has more information concerning compilation does not mean there was a violation of Rule 30(b)(6) and no sanctionable conduct.

Moreover, Plaintiffs also overlook their lengthy deposition of Matt Larson. Plaintiffs' deposition notice asked for information regarding any and all records between AllianceOne and twelve specific people as well as information regarding lists with TCN. Mr. Larson was produced for these two categories. Ex. B, pg. 10:1-12:9, Decl. D. Hall. Mr. Larson's deposition commenced at 10:32 a.m. and concluded at 4:47 p.m. Ex. B, pg. 1, pg. 146:6, Decl. D. Hall. Plaintiffs' prior statement did not mention any issues with Mr. Larson's testimony, and at a minimum, no attorney's fees or costs associated with this deposition.

///

///

///

---

[1] There are two exceptions to this limitation on the discovery. Either "as provided in Rule 35(b)" or "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R.Civ. P 26(b)(4)(B)(i)-(ii). Since the consultants did not prepare a medical report, Rule 35 is inapplicable. Second, Plaintiffs have not made any such motion and demonstrated "exceptional circumstances."

**III. ALLIANCEONE'S PRIOR PRODUCTION OF DOCUMENTS.**

Plaintiffs' primary issue with AllianceOne's production of documents was "they were totally deficient and almost worthless because they were produced as non-searchable pdf documents." Pl.'s Statement pg. 3, lines 21-22. The Court also noted an issue with documents being "unsearchable." May 12, 2010 Order. Notably, Plaintiffs do not assert the documents were not responsive to the requests sought.

Rule 34 allows a party to ask for "any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R.Civ. P. 34(a)(1)(A). "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Plaintiffs' prior request for production did not specify in the exact form which should be used to provide the documents.

There is apparently little consensus in the Ninth Circuit concerning how electronic information can be produced in a "reasonably usable form." For example, district courts have stated "reasonably usable form" is simply printing a hard copy of the electronic data. See. *Sanbrook v. Office Depot*, 2009 U.S. Dist. LEXIS 30852, *5 (N.D. Cal. 2009) ["If Defendant finds it too burdensome to print out the electronic data in order to produce it in hard copy form, it is free to provide the data in electronic form, so long as it is produced in 'a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.'"] and *Daimler Truck North America LLC v. Younessi*, 2008 U.S. Dist. LEXIS 86022, *6

(W.D. Wash. 2008) ["The Federal Rules provide for discovery of electronically stored information either in its original state, i.e. actual production and copying of hard drives, or in a reasonably usable form, i.e. print outs."]. Other courts have required "reasonable usable form" to include a search function, if the original format had a search function. *L.H. v. Schwarzenegger*, 2008 U.S. Dist. LEXIS 86829, *12-13 (E.D. Cal. May 14, 2008)

As noted, case law would have supported AllianceOne producing millions of documents in paper format as "reasonable usable form." AllianceOne's production complied with Federal Rule of Civil Procedure 34 and the prior case law. Plaintiffs never provided the Court with any authority that responsive documents which were provided in a non-searchable or searchable .pdf files are not "reasonably usable form." Under these circumstances, sanctions are not appropriate.[2]

## IV. CONCLUSION.

Based on the foregoing reasons, AllianceOne requests the Court not impose sanctions as its conduct complied with the Federal Rules of Civil Procedure.

Dated: September 30, 2010

NEIL, DYMOTT, FRANK,
MCFALL & TREXLER
A Professional Law Corporation

By: /s David P. Hall
Hugh A. McCabe
David P. Hall
Alan B. Graves
Dane J. Bitterlin
Attorneys for Defendant
ALLIANCEONE RECEIVABLES
MANAGEMENT, INC.

[2] AllianceOne agreed to reformat the documents into a different format which Plaintiffs specifically requested after the production was made.

Hugh A. McCabe, SBN 131828
David P. Hall, SBN 196891
Alan B. Graves, SBN 243076
NEIL, DYMOTT, FRANK,
MCFALL & TREXLER
A Professional Law Corporation
1010 Second Avenue, Suite 2500
San Diego, CA 92101-4959
P 619.238.1712
F 619.238.1562

Attorneys for Defendant
ALLIANCEONE RECEIVABLES MANAGEMENT, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA M. ADAMS AND SARAH GABANY, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,<br><br>Defendant. | CASE NO. 08 CV 0248 JAH WVG<br><br>DECLARATION OF DAVID P. HALL IN SUPPORT OF ALLIANCEONE RECEIVABLE MANAGEMENT, INC.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE RE SANCTIONS<br><br>Hon. William V. Gallo<br>Ctrm: F |

I, David P. Hall, declare as follows:

1. I am over the age of eighteen (18) years and am an attorney employed in the Law Office of Neil, Dymott, Frank, McFall & Trexler, APLC, attorneys of record for AllianceOne Receivables Management, Inc. ("AllianceOne"). I am admitted to practice before all courts in the State of California and the Southern District of California. I have personal knowledge of the facts contained in this declaration and if called to testify, I would and could competently testify to them.

2.      Exhibit A is a true and correct copy of "Plaintiff Christina M. Adams' Notice of Taking Deposition of AllianceOne, Inc's Designated Representative pursuant to Fed. R. Civ. P. 30(B)(6)" which was served on our office.

3.      Exhibit B is a true and correct copy of excerpts from the deposition of Matt Larson, taken on April 21, 2010.

4.      In the course of this case, AllianceOne did retain a firm of consultants to assist in the defense of this case.  However, AllianceOne did not designate any of these consultants as expert witnesses and does not intend to call them as witnesses in this case.

5.      AllianceOne and Plaintiffs jointly requested a stay of the case to allow for full opportunity to settle the case and was later continued.  During the stay, AllianceOne and the Plaintiffs engaged in two days of mediation with Justice Howard Weiner, Ret. in an effort to settle the case.  As a result of the mediation process, the parties have agreed to the basic terms of complete settlement.

6.      Although the basic settlement terms are agreeable, the parties still have one issue to resolve, and it is how the cost for class notice will be paid.  All counsel are working to allow the settlement proceeds to be used for class notice.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated:  September 30, 2010

David P. Hall

**EXHIBIT A**

Joshua B. Swigart, Esq. (SBN: 225557)
**HYDE & SWIGART**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Douglas J. Campion, Esq. (SBN: 75381)
**LAW OFFICES OF DOUGLAS J. CAMPION**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108-3551
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Attorneys for Plaintiff

**HYDE & SWIGART**
San Diego, California

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. ADAMS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANCEONE, INC.,<br><br>Defendants. | **Case No.:** 08 CV 0248 JAH (WBG)<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF CHRISTINA M. ADAMS' NOTICE OF TAKING DEPOSITION OF ALLIANCEONE, INC.'S DESIGNATED REPRESENTATIVE PURSUANT TO FED. R. CIV. P. 30(B)(6).**<br><br>**Date: April 12, 2010**<br>**Time: 10:00 a.m.**<br>**Location: 555 West Beech St., Ste. 101 San Diego, CA 92101** |

**TO: DEFENDANT, ALLIANCEONE, INC., AND ITS ATTORNEYS OF**

RECORD:

**PLEASE TAKE NOTICE** that on April 12, 2010, at 10:00 a.m. and continuing until completed, at Esquire Deposition Services, located at 555 West Beech Street, Ste. 301, San Diego, CA 92101, Plaintiff Christina M. Adams ("Plaintiff"), by and through her designated counsel, will take the deposition under oath of the designated representative(s) for ALLIANCEONE, INC., ("Defendant") before a court reporter qualified under Federal Rule of Civil Procedure 28, pursuant to Federal Rule of Civil Procedure 30(b)(6).

**PLEASE TAKE FURTHER NOTICE** that the designated representative(s) of Defendant must be prepared to testify regarding "matters known or reasonably available to" Defendant including but not limited to:

1. The details regarding or relating to the procedures used in assembling the list provided to Plaintiff's counsel or their agents on or about February 19, 2010, of approximately 9.1 million cell phone numbers that purportedly provided ALLIANCE ONE, INC. with prior express consent to be called on their cell phones, including the instructions given to assemble such list, documents reviewed, manner and procedures used in which documents were reviewed, parameters used in searches for inclusion or exclusion, all factors used in determining inclusion in or exclusion from the list including why certain cell phone numbers were on the list and others were not, and the identity of all persons engaged in the process.
2. All facts regarding or relating to the manner in which all the ways the list provided to Plaintiff's counsel or their agents on or about February 19, 2010of approximately 9.1 million cell phone numbers that purportedly provided ALLIANCE ONE, INC. with prior express consent to be called on their cell phones that ALLIANCE ONE, INC., was modified or changed in any way by ALLIANCE ONE, INC. or ALLIANCE ONE, INC.'s agents, or as a result of any review of or consideration by ALLIANCE ONE, INC. or ALLIANCE

HYDE & SWIGART
San Diego, California

ONE, INC.'s agents, of any cell phone carrier list or ported cell phone number lists or services before, during or after the process of compiling the list.

3. The details regarding or relating to any and all recordings of telephone calls or conversations between anyone at ALLIANCE ONE, INC. and the following persons:

a. Dennis C. Barnett; account number 8376880;

b. Justine P. Batts; phone number 619-701-4585;

c. Colin M. Bean; account number 102162289, phone number 760-846-2831;

d. Michael D. Messner; phone number 619-733-2527;

e. Zabrina Payne; phone number 805-990-8285;

f. Marisol Perez; account number 11524071 and/or 64998934, phone number 760-586-0254

g. David M. Scearce; phone number 619-274-3045;

h. Bradford D. Schultz; phone number 619-341-6464;

i. William Vickers; phone number 858-349--6387;

j. Sarah Gabany; phone number 858-722-8264;

k. Mike Harm; account number 13409550; phone number 760-805-5927;

l. Marie Bokker; phone number 805-990-8285

4. Information regarding or relating to all lists, databases, and outbound call lists, and all other documents, that contain any and / or all calls made by ALLIANCE ONE, INC. through any of ALLIANCE ONE, INC.'s autodialers or containing prerecorded voice messages, or those of ALLIANCE ONE, INC.'s agents from February 8, 2004 to the present;

5. Information regarding or relating to all lists, databases, and other means through which ALLIANCE ONE, INC. provided to TCN the numbers that TCN autodialed for ALLIANCE ONE, INC. at any time;

6. Information regarding or relating to all lists, databases, and other means through which ALLIANCE ONE, INC. provided to Soundbite

Communications     the numbers that Soundbite Communications Soundbite Communications autodialed for ALLIANCE ONE, INC. at any time;

7.   Information regarding or relating to   all lists, databases, and other means through which ALLIANCE ONE, INC. provided to Global Connect containing all the numbers that Global Connect autodialed for ALLIANCE ONE, INC. at any time;

8.   Information regarding or relating to   all databases, outbound call lists, and other records in electronically searchable format, setting forth all calls ALLIANCE ONE, INC. made, or had ALLIANCE ONE, INC.'s agents and third party vendors make on YOUR behalf, to cell phones that are not contained in ALLIANCE ONE, INC.'s list containing persons that provided to ALLIANCE ONE, INC. their prior express consent to be called on their cell phones, such list being the list provided to Plaintiff's counsel or their agents on or about February 19, 2010 and containing approximately 9.1 million cell phone numbers.

9.   Information regarding or relating to   all databases, outbound call lists, and other records in electronically searchable format, setting forth all calls ALLIANCE ONE, INC. made with an autodialer or with a prerecorded voice message, or had ALLIANCE ONE, INC.'s agents and third party vendors make on ALLIANCE ONE, INC.'s behalf, to all telephone numbers that are not contained in ALLIANCE ONE, INC.'s list containing   persons that provided to ALLIANCE ONE, INC. their prior express consent to be called on their cell phones, such list being the list provided to Plaintiffs counsel or the agents on or about February 19, 2010 and containing approximately 9.1 million cell phone numbers.

10.  Information regarding or relating to   databases and lists, in the format in which they were provided to ALLIANCE ONE, INC., that contain cell phone number assignments to wireless carriers that were used by ALLIANCE ONE,

HYDE & SWIGART
San Diego, California

INC. in determining at any time since February 8, 2004 whether a telephone number was a landline or a cell phone number.

11. Information regarding or relating to databases and lists, in the format in which they were provided to ALLIANCE ONE, INC. that ALLIANCE ONE, INC. used to determine whether cell phone numbers assigned to wireless carriers had been "ported", or had their status as cell phone numbers changed to a landline or from a landline to a cell phone, that were used by ALLIANCE ONE, INC. in determining at any time since February 8, 2004 whether a telephone number was a landline or a cell phone number.

12. Information regarding or relating to procedures and processes ALLIANCE ONE, INC. used to separate the one billion, three hundred million, the approximately 26,600,000 TCN numbers, and the list of cell phone numbers on the "prior express consent" list of about 9.1 million calls provided by ALLIANCE ONE, INC on or about February 19, 2010 provided to Plaintiff's counsel in discovery from all the numbers to which ALLIANCE ONE, INC. had in their databases of possible numbers to be called. ,

13. Information regarding or relating to any consultants used by ALLIANCE ONE, INC. or its agents, to assemble, review, compile, analyze or otherwise work with any databases of telephone numbers or accounts in order to itemize, categorize, assemble, separate or otherwise produce lists of any telephone numbers used in this case, including such consultants' names, addresses and other contact information.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff may videotape such deposition to be used at the time of trial.

Dated: March 31, 2010

HYDE & SWIGART

By: Joshua Swigart
Attorneys for Plaintiff

HYDE & SWIGART
San Diego, California

**EXHIBIT B**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

CHRISTINA M. ADAMS, on behalf of herself and all others similarly situated,

Plaintiffs,

vs.

Case No. 08-CV-0248-JAH (WBG)

ALLICANCEONE, INC.,

Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DEPOSITION OF

PERSON MOST KNOWLEDGEABLE OF

ALLIANCEONE

MATTHEW LARSON

April 21, 2010

10:32 a.m.

555 West Beech Street
Suite 111
San Diego, California

Reported by Denise T. Johnson, CSR No. 11902

Q. Let's go through these quick so I have an understanding where we need to go this morning so we can expedite this.

With regard to Topic No. 1, do you have any knowledge as to that?

A. No.

Q. How about No. 2?

A. No.

Q. No. 3?

A. Yes.

Q. And with regard to No. 3, is my understanding correct that you are here to give testimony with regard to the CUBS System?

A. Yes.

Q. And the CUBS System only?

A. Yes.

Q. And based on our last deposition, there are other systems such as the CRS System and the FACS System.

Would that be accurate?

A. Correct.

Q. And you are not here to testify with regard to Topic No. 3 with regard to those two other systems?

A. No.

Q. So No. 3 as it relates to the CUBS only?

A. Yes.

Q. What about the autodialer system? That wouldn't be within your scope of testimony?
A. Which autodialer system are you referring to?
Q. Is there one that relates to the CUBS System?
A. Yes.
Q. Would you be able to give testimony regarding that?
A. Yes.
Q. But the autodialer system only for the limited purpose that it relates to the CUBS System; is that correct?
A. Yes.
Q. How about Topic No. 4?
A. No.
Q. 5?
A. Yes.
Q. As it relates to CUBS only?
A. Yes.
Q. And 6?
A. No.
Q. 7?
A. No.
Q. 8?
A. No.
Q. 9?

A. No.
Q. 10?
A. No.
Q. 11?
A. No.
Q. 12?
A. No.
Q. 13?
A. No.
Q. All right. I know you identified certain areas. Let's talk generally to see if this is within your scope of testimony so we can rule some of this out. My understanding is that in response to our request for discovery in this case, that there was a consent list that was produced by your company that was compiled of about 9.1 million telephone numbers.

Do you have any knowledge about that?
A. I guess I'm confused as to which list you are referring to. I'm aware of a list of accounts. I'm not sure if it's the same one.
Q. And which list of accounts are you aware of?
A. The accounts for the dial records for TCN Voice Broadcasting for CUBS.
Q. You were involved as far as compiling a dial list as it related to only CUBS?

Any changes to be made to the original and signed and returned by the 30th of this month.

The rest of the terms will be the same.

MR. HALL: So stipulated.

I'll take a copy.

(The proceedings concluded at 4:47 p.m.)

* * *