Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**HYDE & SWIGART**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**LAW OFFICES OF DOUGLAS J. CAMPION**
Douglas J. Campion, Esq, (SBN: 75381)
doug@djcampion.com
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Other Attorneys on Signature Page

Attorneys for the Plaintiffs and Proposed
Settlement Class

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. ADAMS AND SARAH GABANY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br><br>     **PLAINTIFFS,**<br>V.<br><br>ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,<br><br>     **DEFENDANT.** | **Case No: 08-CV-0248 JAH(WVG)**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S JOINT MOTION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE: AUGUST 27, 2012<br>TIME: 2:30 P.M.<br>CTRM: 11<br><br>THE HON. JOHN A. HOUSTON |

HYDE & SWIGART
San Diego, California

**HYDE & SWIGART**
San Diego, California

TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     FACTS AND PROCEDURAL HISTORY ........................................4

        A. CLASS ALLEGATIONS .........................................................4

        B. SETTLEMENT .......................................................................5

        C. CAFA NOTICES.....................................................................5

        D. REQUEST FOR ENTRY OF PRELIMINARY APPROVAL ORDER.................5

        E. FAIRNESS HEARING ............................................................6

        F. ATTORNEYS' FEES AND COSTS APPLICATION.................6

        G. PROPOSED CLASS ACTIONS SETTLEMENT TERMS.........6

                1. Certification of a Fed.R.Civ.P. 23(B)(3) Settlement Class ...........6

                2. Settlement Benefits ...........................................................7

                        a. Monetary Awards to Class Members ........................7

                        b. Payment of Notice and Administrative Costs by AllianceOne..........8

                        c. Incentive Awards, Attorneys' Fees, and Costs...............8

                        d. Reversion ...................................................................9

        H.  NOTICE PROVIDED .............................................................9

                1. Mailed Notice ....................................................................9

                2. Website/Full Notice...........................................................9

                3. Published Notice ................................................................10

                4. Internet Notice Procedures ..............................................10

        I.  CLAIMS PROCEDURE AND CLAIMS FILED ......................10

                1. Claims Filed........................................................................10

                2. Exclusions ..........................................................................11

                3. Objections ...........................................................................11

        J.  SCOPE OF RELEASE ...........................................................11

**III. ARGUMENT** ................................................................................................ **12**

    **A.**    **THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE** ................................................ **12**

    **B.**    **THE SETTLEMENT, WHICH WAS REACHED AFTER EXTENSIVE LITIGATION AND IS THE RESULT OF ARMS-LENGTH NEGOTIATION BEFORE A RESPECTED MEDIATOR, IS PRESUMPTIVELY FAIR** ............. **13**

    **C.**    **THE STRENGTH OF THE LITIGATION AND THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION** ... **14**

    **D.**    **THE AMOUNT OFFERED IN SETTLEMENT** ..................................... **16**

        **1**. **Payments to Qualified Class Members are Fair, Adequate, and Reasonable** ............................................................................. **16**

        **2. Reversion of Any Remaining Settlement Funds to AllianceOne is Appropriate** ............................................................................ **16**

    **E.**    **THE EXTENT OF DISCOVERY COMPLETED** ................................. **17**

    **F.**    **THE EXPERIENCE AND VIEWS OF CLASS COUNSEL** ................. **18**

    **G.**    **THE REACTION OF THE CLASS MEMBERS TO THE PROPOSED SETTLEMENT** ....................................................................... **19**

**IV. CONCLUSION** ............................................................................................. **19**

# TABLE OF AUTHORITIES

## CASES

*Beecher v. Able*
  441 F. Supp. 426, 429 (S.D.N.Y. 1977) ……………………………………..……..16

*Boyd v. Bechtel Corp.*
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................................11

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) …………………………………………………………………..16

*Detroit v. Grinnell Corp.,*
  495a g.2 448 (2d Cir. 1974). ....................................................................19

*Ellis v. Naval Air Rework Facility*
  87 F.R.D. 15 (N.D. Cal 1980), aff-d 661 F.2d 939 (9th Cir. 1981)…………………8, 11

*Girsh v. Jepson; In re Warner Commiunications Sec. Litig.,*
  521 F.2d 153 (3d Cir. 1993); 618 F. Supp. 735 (S.D.N.Y. 1985)....................13

*Linney v. Cellular Alaska Partnership*
  151 F.3d 1234 (9th Cir. 1998)....................................................................18

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*
  671 F. Supp 819 (D. Mass. 1987)……………………………………………………18

*Mangone v. First USA Bank,*
  206 F.R.D. 222, 230 (S.D. Ill. 2001) ........................................................17

*Mba v. World Airways, Inc.*
  369 F. App'x 194, 197 (2d Cir. 2010)……………………………………………16

*McKinnie v. JP Morgan Chase Bank, N.A.*
  678 F. Supp. 2d 806, 813 (E.D. Wis. 2009) ……………………………………17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523, 528 (C.D. Cal. 2004) ........................................................13

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*
  688 F.2d 615 (9th Cir. 1982)……………………………………………………..12, 13, 15

*PaineWebber Ltd. Litig.,*
  171 F.R.D. 104, 126 (S.D. N.Y.) ........................................................12

*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009)………………………………………………..……12

HYDE & SWIGART
San Diego, California

1

*Staton v. Boeing Co.*
        327 F.3d 938 (9th Cir.)................................................................. 12

2

*Warner Comunication,*
        618 F. Supp at 745 .........................................................13, 18, 19

3

4

*West Virginia v. Chas. Pfizer & Co.*
        314 F. Supp. 710, (S.D.N.Y. 1970). ...................................................9

5

6

*Williams v. MGM-Pathe Commc'ns Co.*
        129 F.3d 1026 (9th Cir. 1997) ………………………………………..…16

7

*Wilson v. Southwest Airlines, Inc.,*
        880 F.2d 807, 815-16 (5th Cir. 1989) …………………………………………17

8

9

10

## STATUTES

11

47 U.S.C § 227 (TCPA) ...........................................................2, 5, 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HYDE & SWIGART
San Diego, California

Plaintiffs Christina M. Adams, Sarah Gabany, and Michael D. Messner (hereinafter referred collectively referred to as "Plaintiffs" or "Class Representatives"), on behalf of themselves and all other individuals similarly situated, and Defendant AllianceOne Receivables Management, Inc. (hereinafter referred to as "Defendant" or "AllianceOne"),   submit this memorandum in support of their Joint Motion for Final Approval of Class Action Settlement Agreement.

## I.   INTRODUCTION

### Overview of the Settlement

This Settlement is an excellent result which merits final approval.   The Settlement provides a substantial Settlement Fund [1]  of $9,000,000 to provide statutory damages to persons called by AllianceOne on their cell phones without prior consent, allegedly in violation of the Telephone Consumer Protection Act ("TCPA").   Through direct mail and publication notice , and extensive internet advertising, Class Members were informed of and had the opportunity to call a Toll-Free Number or to go online to the Settlement Website to file a claim for $40.00 (or a *pro rata* portion of the Fund, depending on the number of claims filed.

Importantly here, under the Settlement, each of the Class Members for which an address could be found received a direct mail postcard summary notice. That way, as many Class Members as possible were informed of the Settlement, were directed to the Settlement Website to learn more about it, and could choose whether to participate.   This type of direct mail notice is a much more expensive notice than other types of notice, such as publishing information about the Settlement, but it is the best notice possible, and such notice was provided to 5,545,208 Class Members. In addition, the notice was published in *USA Today,* and as noted, the internet was used to disseminate notice information through banners and other notice procedures.

The costs of litigating this action, including the incentive payments to the Class Representatives, any attorneys' fees awarded to Class Counsel by the Court, and the costs of notice and claims administration, will be paid from the Settlement Fund, and the remainder will

---

[1] Unless otherwise defined, terms which are capitalized in this Memorandum have the meanings set forth in the Stipulation of Settlement, filed with the parties' Motion for Preliminary Approval of Settlement (Docket. No. 109, Ex. 1.)

be paid to Qualified Class Members at the rate of $40.00 per claim (or a *pro rata* share of the Settlement Fund).  If there is any amount remaining in the Settlement Fund after the settlement costs and claims are paid, that remainder reverts to the Defendant. Thus, the Settlement of up to $9,000,000 provides Qualified Class Members with a $40.00 monetary payment, at no cost to the Class Member and without the need for each Class Member to file his or her own lawsuit. At $40.00 per claim, that equals $2,562,320.00 for the 64,058 claims made to date, with the likelihood that additional claims will be filed in the upcoming weeks.  The Settlement also had the effect of putting an end to conduct alleged to be a violation of the TCPA.   Therefore, the Settlement is an excellent result and should be given final approval by the Court.

*History of the Case and Settlement*

On February 8, 2008, Plaintiffs filed this class action lawsuit (hereinafter referred to as the "Litigation") against Defendant.   Plaintiffs asserted class claims against Defendant under the Telephone Consumer Protection Act, 47 U.S.C. § 227.   Specifically, Plaintiffs alleged that AllianceOne violated the TCPA by placing telephone calls to their cellular telephones without "prior express consent," using an "automatic telephone dialing system" and using an "artificial or prerecorded voice."  (Docket No. 1.)

This action was extensively litigated over the next two years prior to any settlement discussions.  In the summer of 2010 the Parties engaged in two all-day mediation sessions before Justice Howard Weiner (Ret.), a highly respected mediator and former Justice of the California Court of Appeal. See Joint Motion for Preliminary Approval (Docket No. 109) and Declaration of Justice Howard B. Wiener (Ret.) (Docket No. 109, Ex. 5), previously filed.[2]  Settlement discussions continued, at length, until a final settlement was reached.  The complete terms of the Settlement are set forth in the previously filed Stipulation of Settlement and Release ("stipulation of Settlement"), which was preliminarily approved by the Court.

On April 23, 2012, based upon the Stipulation of Settlement, the Preliminary Approval Motion, and the record, the Court entered an Order of Preliminary Approval of Class Action

_____

[2]  The history of the case is detailed in the declarations of Joshua Swigart, Douglas Campion and Hugh McCabe, filed in support of the Joint Motion for Preliminary Approval of Class Action Settlement, Docket No. 109.

HYDE & SWIGART
San Diego, California

Settlement (hereinafter referred to as the "Preliminary Approval Order"). [Docket No. 113] Pursuant to the Preliminary Approval Order, the Court, among other things: (i) preliminarily certified (for settlement purposes only) a class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Litigation; (ii) preliminarily approved the proposed Settlement; (iii) appointed named Plaintiffs Christina M. Adams and Sarah Gabany, as well as Micheal Messner, as the Class Representatives; (iv) appointed Hyde & Swigart and the Law Offices of Douglas J. Campion as Class Counsel; and (v) set the date and time of the Final Approval Hearing (hereinafter referred to as the "Fairness Hearing") for August 27, 2012, at 1:30 P.M. (Docket No. 113.)

*Notice Procedures*

As required by the Preliminary Approval Order, the Parties engaged an independent  and well-respected settlement administrator, Gilardi & Co, LLC. ("Gilardi" or "Settlement Administrator"), to assist in administration of the class action settlement process.  *See* Declaration of Dennis Gilardi In Support of Joint Motion for Final Approval of Class Action Settlement ("Gilardi Decl."); *see also* Declaration of Tricia Solorzano on Behalf of Settlement Administrator with Respect to Notice and Claims Process in Support of Joint Motion for Final Approval of Class Action Settlement ("Solorzano Decl."), ¶ 3.

As required by the Preliminary Approval Order, Gilardi sent individual notices to the Settlement Class members by mailing postcard-type notices, including a summary of the Settlement's terms, instructions for making a claim, and information regarding a website address (the "Settlement Website") and a Toll-Free Number maintained by Gilardi to receive calls regarding the Settlement.   The summary notice directed Class Members to the Settlement Website, where detailed information regarding the Agreement was posted, including the full notice and the complete text of the Stipulation of Settlement.  Decl. T. Solorzano", ¶¶ 5-10, and Exhibit B thereto.  Gilardi followed the notice procedure set forth in the Stipulation of Settlement and approved in the Preliminary Approval Order Solorzano Decl., ¶ 5.

The summary and full notices advised Class Members that in order to receive a portion of the Settlement Fund (described below), they needed to either call the Toll-Free Number, submit a

1    claim online, or mail in a claim form no later than August 6, 2012.  The summary and full notices

2    also advised Class Members that the deadline to exclude themselves from the settlement was

3    August 16, 2012 and the deadline to object to the settlement was August 16, 2012. Solorzano

4    Decl., Exs. A, B.

5          *Response of Class*

6          Gilardi was also engaged to receive and process all claims and exclusions; objections were

7    to be filed with the Court, with copies to counsel for both sides.  Preliminary Approval Order at

8    pp. 5-6, ¶ vi.  No objections have been flied to date, with this motion being prepared more than

9    two weeks prior to the August 16, 2012 objection and opt-out deadline.  Solorzano Decl., ¶ 22.

10   Furthermore, only 39 requests for exclusions have been submitted to date. *Id*, ¶ 21, Ex. F. In total,

11   66,901 claims by Qualified Class Members have been made to Gilardi so far, with the deadline

12   for filing claims August 6, 2012. *Id*., ¶ 18.  However, only 64,058 of those claims are valid. *Id*. At

13   $40.00 per claims, that equals $2,562,320.00 for those valid claims made to date, with additional

14   claims likely to be filed in the upcoming weeks.

15         Pursuant to Fed. R. Civ. P. 23(e), the Parties now seek final certification and approval of

16   the proposed class action settlement. Specifically, the Parties request the Court enter a Final Order

17   and Judgment similar to the proposed Order submitted with this motion (the "Final Approval

18   Order").

19   **II.    FACTS AND PROCEDURAL HISTORY**

20         **A.   CLASS ALLEGATIONS**

21         As noted, on February 8, 2008, Plaintiff Adams[3] filed this class action against Defendant.

22   (Docket No. 1.)  Plaintiff asserted class claims against Defendants under the TCPA.  Specifically,

23   Plaintiffs alleged that Defendants violated the TCPA by making telephone calls to their cellular

24   telephones without "prior express consent," using an "automatic telephone dialing system" and

25   using an "artificial or prerecorded voice."  On behalf of themselves and others similarly situated,

26   Plaintiffs asserted two TCPA claims against Defendant.

27

28
[3] An additional named Plaintiff, Sarah Gabany, was added with the permission of the Court on April 26, , 2010.  In addition, a third individual, Michael Messner, was included as a Class Representative and is a named Plaintiff in the Third Amended Complaint.  (Docket No. 114)

HYDE & SWIGART
San Diego, California

First, Plaintiffs alleged that Defendant committed negligent violations of the TCPA.   For this first claim, on behalf of themselves and the putative class, Plaintiffs sought $500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B).   Second, Plaintiffs alleged that Defendant committed knowing and/or willful violations of the TCPA.   For this second claim, Plaintiff sought for herself and the putative class $1,500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B) and § 227(b)(3)(C).  Defendant denies that it violated the TCPA in any regard.

## B.   SETTLEMENT

After two years of active litigation, and in an earnest attempt to settle the Litigation and avoid the risks inherent in proceeding to trial, the Parties engaged in extensive mediation on two occasions.  Two full-day mediations were held before Justice Howard Wiener (Ret.) on June 10, 2010 and August 30, 2010. Those mediation efforts, with the assistance of Justice Wiener, resulted in a settlement in principle on August 30, 2010. See Decl. of Justice Wiener outlining the extensive settlement discussions, filed in support of the Parties' Joint Motion for Preliminary Approval, Docket No. 109, Ex. 5. However, it took the Parties another 18 months until January, 2012, to negotiate and agree upon all of the details of the Settlement, with several further in-person and telephonic sessions with Justice Wiener required.

Happily, the efforts of Counsel to reach a compromise in the form of a proposed class settlement proved fruitful; approximately three years and eleven months after the case was initially filed, the Parties were able to memorialize the terms of the Settlement in the Stipulation of Settlement.

## C.   CAFA NOTICES

On March 5, 2012, Gilardi caused the required notices under the Class Action Fairness Act ("CAFA")  to be sent to the 50 States' Attorney Generals and the office of the U.S. Attorney General.   In addition to the letter, a CD containing the documents listed on the letter in PDF format was included in the mailing to each Attorney General.   Solorzano Decl., ¶ 4.  McCabe Decl., ¶10.

## D.   REQUEST FOR ENTRY OF PRELIMINARY APPROVAL ORDER

On February 24, 2012, the parties filed a Joint Motion for Preliminary Approval of Class

HYDE & SWIGART
San Diego, California

Action Settlement.   (Docket No. 110.)   On April 23, 2012, the Court entered the Preliminary Approval Order, preliminarily certifying the proposed Class for purposes of the Settlement, and preliminarily approving the terms of the proposed Settlement.  (Docket No. 113.)

### E.   FAIRNESS HEARING

Per the Preliminary Approval Order, the Court set the Fairness Hearing for August 27, 2012, 2:30 p.m., at the United States District Court for the Southern District of California, located at 940 Front Street, San Diego, California, 92101.  (Docket No. 113.)  The Fairness Hearing will be heard in Courtroom 11 with The Honorable John A. Houston presiding.

### F.   ATTORNEYS' FEES AND COSTS APPLICATION

Also at the Fairness Hearing, the Court will also consider Class Counsel's previously filed motion for attorneys' fees and costs, entitled Plaintiffs' Motion for Attorney's Fees and Costs and Service Awards to Named Plaintiffs ("Fees Motion").  (Docket No. 115.)

### G.   PROPOSED CLASS ACTION SETTLEMENT TERMS

The significant terms of the proposed Settlement are the following:

### 1.   CERTIFICATION OF A FED.R.CIV.P. 23(B)(2) AND (B)(3) SETTLEMENT CLASS

The Joint Motion for Preliminary Approval confirmed the following persons are in the Settlement Class:

> "[A]ll persons within the United States to whom any telephone calls were made by AllianceOne or any of the other Released Parties between February 8, 2004 and November 30, 2010 to such person's cellular telephone, paging service, specialized mobile radio service, other radio common carrier service or any service for which the called party is charged for the call, through the use of any automatic telephone dialing system which has the capacity to store or produce numbers (whether or not such capacity was used), including, without limitation, an automated dialing machine dialer, auto-dialer or predictive dialer, or an artificial or prerecorded voice, without such person's prior express consent.  Excluded from the Class are: (a) the officers, directors, and employees of AllianceOne, the members of the immediate families of the foregoing, and their respective legal representatives, heirs, successors and assigns, (b) the officers, directors and employees of any parent, subsidiary or affiliate of AllianceOne, and the immediate families of the foregoing, (c) Counsel for AllianceOne and Class Counsel and the members of their respective immediate families; and (d) those individuals identified by the List of

1    Excluded Numbers."

2    Preliminary Approval Order, Docket No. 113, p. 2, ¶ 1.

3    **2.   SETTLEMENT BENEFITS**

4    Under the Settlement, AllianceOne has agreed to pay an all-inclusive maximum settlement

5    amount of Nine Million Dollars ($9,000,000.00) into the Settlement Fund, which includes (1) all

6    Administrative Expenses, including expenses of providing Class Notice, (2) all Taxes and tax-

7    related expenses, (3) any incentive payments that the Court may award to the Class

8    Representatives, (4) any attorneys' fees or costs that the Court may award to Class Counsel, and

9    (5) all Settlement Awards paid to Qualified Class Members. [4]  Stipulation of Settlement § 5.1.1.

10   Any amounts remaining in the Settlement Fund after the payment of all claims, expenses,

11   attorneys' fees and costs, and costs of notice and claims administration will be returned to

12   AllianceOne.  Stipulation of Settlement § 9.8.

13   At the time of the filing of the Motion, there were 66,901 claims submitted, of which

14   64,058 are valid claims.   (Solorzano Decl. ¶ 18.).   Based on this number, Defendant will be

15   required to pay the maximum amount to each Qualified Class Member as provided in the

16   Stipulation of Settlement, $40.00. At $40.00 per Qualified Class Member, the Class will be paid

17   $2,562,320.00  for the 65.327 claims filed so far, with additional time remaining in the Claims

18   Period.     Stipulation of Settlement § III, C.  Declaration of Douglas J. Campion in Support of

19   Final Approval of Class Action Settlement ("Campion Decl."), ¶6.a.    Because this Motion is

20   being filed weeks prior to the  claim, objection and exclusion deadlines, a supplemental statement

21   will be filed prior to the hearing advising the Court of the final number of claims, requests for

22   exclusions, and objections.

23        **a. Monetary Awards to Class Members**

24        Under the Settlement, Qualified Class Members (all Settlement Class Members

25   who meet the criteria set forth in the Stipulation of Settlement, other than those who elect not to

26   [4] Under the terms of the Settlement, AllianceOne shall pay Settlement Awards totaling at least $1,000,000.00.  If the aggregate
     amount of the Settlement Awards to the Qualified Class Members was less than $1,000,000.00, then a *cy pres* distribution would
27   have been made in an amount equal to the positive difference between $1,000,000.00 and the aggregate amount of the Settlement
     Awards.  Stipulation of Settlement § 9.7.  However, given the number of Qualified Class Members, the aggregate amount of the
28   Settlement Awards to Qualified Class Members will necessarily total more than $1,000,000.00, and there will be no *cy pres*
     distribution.

HYDE & SWIGART
San Diego, California

participate in the Settlement) will receive a monetary award.  Stipulation § 9.1.  After the Administrative Expenses and other amounts described above are deducted, the amount remaining in the Settlement Fund ("Remainder Amount") will be distributed to Qualified Class Members. *Id.*  The Settlement Administrator will calculate the amount of the Settlement Award for each class member by dividing the Remainder Amount by the number of Qualified Class Members, subject to a maximum Settlement Award of $40.00 per Qualified Class Member.  *Id.*  If the product of the number of Qualified Class Members multiplied by $40 exceeds the Remainder Amount, then the Settlement Award shall be an amount equal to each Class Member's *pro rata* share of the Remainder Amount.  *Id.*

### b. Payment of Notice and Administrative Costs by Alliance One

As provided by the Stipulation, the estimated costs of Class Notice of $1,890,257.00 were deposited by AllianceOne into the Settlement Fund Account.  Stipulation of Settlement §§ 5.1.2, 5.1.3, 8.5.  The remaining actual Administrative Expenses, including Notice Expenses, incurred by the Settlement Administrator will be supported by itemized invoices and shall be paid from the Settlement Fund upon Final Approval.  Stipulation §§ 5.1.2, 8.5.1.  The total amount to be incurred by Gilardi for notice and claims administration through completion for which they seek payment from the Settlement Fund is $2,517,945.45.  Solorzano Decl., ¶ 23; Campion Decl., Ex. A. All Administrative Expenses, including Notice Expenses, are part of and not in addition to the Maximum Payment of $9,000,000.  Stipulation § 1.27.

### c. Incentive Awards, Attorneys' Fees, and Costs

On July 7, 2012, Class Counsel moved for attorneys' fees, costs, and incentive awards for the Class Representatives (the "Fees Motion," as described above).   (Docket. No. 115.)   As provided in the Stipulation of Settlement, AllianceOne does not oppose the Fees Motion.   The Parties and their counsel have agreed that allowance or disallowance by the Court of the agreed-upon amount requested for  attorneys' fees, costs, and expenses may be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceedings relating to the fees, costs, and/or expenses owed Class Counsel, or any appeal reversal, or modification to such an order, shall not operate to terminate or

HYDE & SWIGART
San Diego, California

cancel the Stipulation of Settlement, or affect or delay the finality of the proposed Final Approval Order.  Stipulation of Settlement § 12.7.

### d. Reversion

If there is any amount remaining in the Settlement Fund Account after distribution of the funds to pay Administrative Expenses, Taxes and tax-related expenses, any incentive awards to Class Representatives and attorneys' fees and costs ordered by the Court, and the Settlement Awards to Qualified Class Members, that amount shall be returned to AllianceOne or its designee(s).  Stipulation of Settlement §§ 8.7.1(h), 9.8.

## H.   NOTICE PROVIDED

### 1.   MAILED NOTICE

There were 5,627,963 postcard notices mailed to the Class members, in compliance with the Preliminary Approval Order.  Solorzano Decl. ¶ 9. In assembling the Class Notice list, as the Parties advised the Court in the Preliminary Approval Motion, AllianceOne did not have addresses for approximately 10% of the 6,079,411 identified Class Members, so an effort was made to find addresses for those persons. Gilardi Decl., ¶¶ 8-9. Of that amount, addresses were found for approximately 301,803 persons. *Id,* Solorzano Decl., ¶ 8.   Gilardi received returned mail from the U.S. Postal Service for 1,305,946. *Id.,* at ¶ 15.  Of that number, new addresses were found for 1,133,498 persons, over 86% of the returned mail, totaling 5,455,515 that were mailed direct mail notice to what seems to be   the most current addresses available in AllianceOne's Files. Thus, notice postcards went to 5,455,515 Class Members, almost 97% of the 5,627,963 on the notice list cleaned up by Gilardi.  *Id.* at ¶¶ 9, 15.   The summary notice contained in the mailed postcard directed Class Members to the Settlement Website to obtain complete information regarding the Litigation and the Settlement.  The summary notice also instructed Class Members how to submit a claim with Gilardi by either calling the Toll-Free Number, going online to make a claim through the Settlement Website, or submitting a written claim by traditional mail. Campion Decl, ¶ 11;  Solorzano Decl., Ex. B.

### 2.   WEBSITE/FULL NOTICE

As required by the Preliminary Approval Order, Gilardi established a Settlement Website,

HYDE & SWIGART
San Diego, California

www.allianceonesettlement.com, (the "Settlement Website") and a Toll-Free Number both to receive calls regarding the Settlement and to allow Class Members to file claims. Gilardi Decl., ¶¶ 10, 16; Solorzano Decl., ¶¶ 10-11.   The full notice in Question & Answer format (the "Q&A Form") was posted on the Settlement Website, as were other case-related documents. *Id*., ¶ 10.

### 3.   PUBLISHED NOTICE

Gilardi also published the notice in the USA Today, in conformity with the Preliminary Approval Order.  Gilardi Decl., ¶ 11; Solorzano Decl., ¶ 6.

### 4.   INTERNET NOTICE PROCEDURES

Gilardi also instituted certain notice procedures as set forth in the Stipulation of Settlement to optimize internet exposure of the Settlement and instructed how to access further information through the Settlement Website, including issuing a press release disseminated to thousands of media outlets.  Gilardi Decl., ¶¶ 13-15; Solorzano Decl., ¶ 7.

### I.   CLAIMS PROCEDURE AND CLAIMS FILED

The Class Members were provided no less than 75 days to make a claim for a Settlement Award, and an additional ten days to submit a Request for Exclusion or file an Objection. Solorzano Decl. ¶¶ 16, 20-21.

### 1. Claims Filed

The Settlement Claims procedure was made as easy as possible – no claim form was necessary unless someone wanted to use regular U.S. Mail to submit a claim form downloaded from the Settlement Website.  Campion Decl., ¶ 13.  All that was required to file a claim was a call to the Toll-Free Number or an on-line submission to  file a claim.  Solorzano Decl.,  ¶¶ 10-11. The deadline to submit a claim is August 6, 2012. *Id.* at ¶ 16.   In total, 66,901 valid claims have been filed at the time this brief was submitted, of which 64,058 were found to be valid by Gilardi. *Id.* at ¶ 18.  Based upon the present number of valid claims in the amount of 64,058 to date, it is anticipated that each Qualified Class Member will receive the maximum amount under the Stipulation of Settlement of $40,00, if the Court awards the Settlement Costs as requested, as discussed below.  Gilardi will be distributing the settlement checks with payment made after final approval, and after the final numbers relating to Settlement Costs awarded and valid claims are

HYDE & SWIGART
San Diego, California

1  known.  *Id.* at ¶ 20.

2              **2. Exclusions**

3        Gilardi was also engaged to receive and process all claims and requests for exclusion

4  ("opt-outs").  The Preliminary Approval Order required the Class Members  to send their written

5  requests for exclusion to Gilardi 10 days after the end of the Claims Period,  by August 16, 2012.

6  As of the date of submitting this Motion, a relatively small percentage of requests for exclusion

7  were received, 39, out of 5,455,515 Class Members to whom notice was mailed.   Solorzano

8  Decl., ¶ 21. They are attached to the Solorzano Decl. as Ex. F.

9              **3. Objections**

10       The deadline for filing an objection to the Settlement is August 16, 2012, ten days after

11 the end of the Claims Period.   This deadline has not yet passed.   To date, there have been no

12 objections filed with the Court, or if they were, they were not mailed to the Settlement

13 Administrator as required by the Preliminary Approval Order, ¶ 13.  Solorzano Decl., ¶ 22.

14   **J.    SCOPE OF RELEASE**

15       The scope of the release by all Qualified Class Members tracks the scope of Plaintiffs'

16 allegations:

17           [U]pon the Effective Date, each of the Plaintiffs and the Class Members
             shall be deemed to have fully and finally released AllianceOne and all
18           other Released Parties from any and all Released Claims, as defined in
             Section 1.41, including Unknown Claims, as described in Sections 7.1.1
19           and 7.1.2.   Upon the Effective Date, AllianceOne shall be deemed to have
             provided a full and complete release to Plaintiffs as described in Section
20           7.2.

21

22

23

24

25

26

27

28

HYDE & SWIGART
San Diego, California

Stipulation of Settlement § 7.1.  Section 1.41 of the Stipulation defines Released Claims. [5]

## III.   ARGUMENT

The Rule 23(a) and (b) factors were previously analyzed and applied by the Parties in their Motion for Preliminary Approval.  (*See* Docket No. 109.) As the Court ruled in its Preliminary Approval Order, this case satisfies the Rule 23 requirements.  (*See* Docket No. 113.)

### A.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

---

[5]  "Released Claims" means every claim, right, demand, liability or cause of action of every nature and description whatsoever, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, existing as of the Effective Date, including, without limitation, Unknown Claims, statutory, equitable, constitutional, contractual, or common law claims for damages, unpaid costs, fines, penalties, taxes, liquidated damages, statutory damages, nominal damages, punitive damages, multiplied damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, that:

(a)   arises from or is claimed to be a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.*, and was or could have been alleged or asserted by Plaintiffs or any Class Member against Defendant or any other Released Party in the Litigation or in any other court action or before any administrative or governmental body or agency (including any federal or state regulatory commission), tribunal, arbitration panel, or self-regulatory organization; or

(b)   arises out of or is related to the conduct of AllianceOne or anyone acting on its behalf (including any of the other Released Parties) in contacting or attempting to contact any Class Member through the use of an "automatic telephone dialing system" which has the capacity to store or produce numbers (whether or not such capacity was used) including, without limitation an automated dialing machine dialer, auto-dialer or predictive dialer, and/or an "artificial or prerecorded voice" to make a call to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, other radio common carrier service or any service for which the called party is charged for the call" without "prior express consent" (to the fullest extent that those terms are used in, defined by or interpreted under 47 U.S.C. § 227(b)(1)(A)(iii), the TCPA or any relevant judicial, regulatory or administrative rulings, regulations, promulgations or case law).

HYDE & SWIGART
San Diego, California

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. To determine whether the proposed settlement is fair, reasonable and adequate, the Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations.   In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon, supra,* 150 F.3d at 1027 (9th Cir. 1998).

Application of the relevant factors here confirms that the proposed settlement should be finally approved.

**B.   THE SETTLEMENT, WHICH WAS REACHED AFTER EXTENSIVE LITIGATION AND IS THE RESULT OF ARMS-LENGTH NEGOTIATION BEFORE A RESPECTED MEDIATOR, IS PRESUMPTIVELY FAIR**

The Settlement is presumptively fair because it was the result of good faith, arms-length negotiations and followed significant investigation and discovery by the Parties prior to and during the Litigation.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Prior to entering into the settlement negotiations, from February 2008 through April 2010, the Parties vigorously pursued their respective positions in the Litigation.   Extensive discovery was conducted on both sides.  Decl. of Hugh McCabe in Support of Motion for Final Approval ("McCabe Decl."), ¶ 3.   AllianceOne produced millions of pages of documents in response to Plaintiffs' document requests.  *Id.*  Plaintiffs took 10 depositions of AllianceOne witnesses and the parties each propounded and responded to several sets of interrogatories and document requests.

HYDE & SWIGART

San Diego, California

1  Discovery motions were filed and heard, and motions to stay were litigated. *Id,* ¶ 4.

2       Additionally, AllianceOne filed a motion to dismiss, which was denied, and two separate

3  motions for summary judgment.  *Id.* The first motion was withdrawn when the Court granted

4  Plaintiff Adams leave to add a new plaintiff to the case.   *Id.*  The second motion for summary

5  judgment was pending at the time that the settlement was reached.  *Id.*

6       The Settlement is the result of intensive arms-length negotiation, including two day-long

7  mediation sessions, and several shorter in-person sessions and additional telephonic sessions,

8  conducted by a respected former Justice of the California Court of Appeal who has experience in

9  mediating complex class actions, Howard B. Wiener (Ret.). *Id,* ¶ 5 .[6] The Parties' counsel also

10 engaged in extensive discussions for more than a year after the agreement in principle was

11 reached to reach the final terms of the Stipulation of Settlement. *Id.*  The time and effort spent on

12 settlement negotiations, as well as the involvement of a well-regarded mediator, militate in favor

13 of final approval of the Settlement, as they strongly indicate there was no collusion.  *See In re*

14 *Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).   The Parties

15 previously made the preliminary showing that the Settlement and the negotiation process that led

16 to it were fair and adequate.  (Docket. No. 113.)

17      Because the Parties (1) engaged in significant and meaningful discovery and motion

18 practice, (2) reached a Settlement with the help of an able and independent mediator, and (3)

19 carefully negotiated and drafted a detailed Stipulation of Settlement that was preliminarily

20 approved by this Court, the Court should conclude that the Parties' Settlement was reached in

21 good faith after contested litigation and a well-informed arms-length negotiation, and the

22 Settlement is entitled to a presumption of fairness.

23   **C.   THE STRENGTH OF THE LITIGATION AND THE RISK, EXPENSE, COMPLEXITY, AND**
          **LIKELY DURATION OF FURTHER LITIGATION**
24

25      Defendant has raised numerous defenses to the class claims.  Many of these defenses are

26 set forth at length in Defendant's Answer, which was filed with the Court.   (Docket No. 9.)

27 Defendant avers that its defenses have merit and would defeat the claims of the putative class.

28

---

[6] The Parties had shorter mediation sessions with Justice Wiener in June and October 2011 during the course of drafting the settlement documents. McCabe Decl., ¶ 5 .

HYDE & SWIGART
San Diego, California

Settlement eliminates any further risk and expense for the Parties.  Considering the potential risks and expenses associated with continued prosecution of the Litigation, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate.  As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice*, 688 F.2d at 624.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Id.*

While Class Counsel believe strongly in the merits of their claims brought on behalf of the Class, they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this Circuit.  *See Officers for Justice*, 688 F.2d at 635. Moreover, even if Plaintiffs were to prevail at trial, risks to the class remain. This Court certified the Class only for Settlement purposes.  (Docket. No. 113 at 1:19-2:13.)  The class certification determination in TCPA matters is highly case-specific.  While in a number of cases TCPA class actions have been certified, [7] in other cases, courts have refused to certify such actions.[8]  If this case is not settled, AllianceOne would oppose Plaintiffs' motion for class certification.  Class Counsel is aware of the difficulties in certifying a class generally, and specifically in TCPA cases, but is confident that a class would be certified here, should the case proceed.   AllianceOne recognizes that if a class were to be certified, and if Plaintiffs were to prevail, the potential amount of damages could be substantially higher than the Settlement agreed upon here.   Therefore, both Parties seek to avoid the risk of continued litigation, and accordingly, seek the Court's final approval of this Settlement.

The Settlement provides a prompt and efficient resolution of the Litigation.  The benefits of the Settlement to Class Members far outweigh the potential benefit of continued litigation with

---

[7] *See CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 143 (N.D. Ill. 2009); *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 651 (W.D. Wash. 2007).

[8] *See Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315-16 (N.D. Ill. 2008); *Sadowski v. Med1 Online, LLC*, 2008 U.S. Dist. LEXIS 12372, at *11 (N.D. Ill. Feb. 20, 2008); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2007 U.S. Dist. LEXIS 91512, at *7-8 (N.D. Ill. Dec. 13, 2007).  *See also Levitt v. Fax.com*, 2007 U.S. Dist. LEXIS 83143, at *24-25 (D. Md. May 25, 2007) (decertifying class).

HYDE & SWIGART
San Diego, California

1  its uncertainty, cost, delay, and potential for an unfavorable outcome.

2  **D.   THE AMOUNT OFFERED IN SETTLEMENT**

3  **1.   Payments to Qualified Class Members are Fair, Adequate, and Reasonable**

4  The Stipulation of Settlement required Defendants to establish a Settlement Fund of a

5  maximum of $9,000,000, from which Class Members have the right to make a claim to receive a

6  settlement check.   To date, 64,058 Class Members have submitted valid claims, and at $40.00

7  per claim, the amount to be paid from the Settlement Fund is $2,562,320.00.   Accordingly, based

8  on the number of Class Members filing claims so far, each class member will receive the

9  maximum payout, as set forth in the Stipulation of Settlement.  Stipulation of Settlement § III, C.

10  Solorzano Decl., ¶ 2.  That is a settlement check in an amount on a par with the results obtained

11  in other TCPA settlements, and warrants final approval.  *See Arthur v. Sallie Mae, Inc.*, Case No.

12  10-00198 (W.D. Wash. Sept. 17, 2010) (approving fairness of settlement in TCPA case where the

13  estimated cash portion of the settlement award was expected to be $20.00 to $40.00 per class

14  member).

15  Also, low claims rates are common in consumer cases such as this, *see* Campion Decl., ¶

16  13, but that does not affect the underlying fairness of the settlement.  Even in a class action case

17  where fewer claims were made than expected, the court found that "the settlement agreement

18  should not lightly be set aside." *Beecher v. Able*, 441 F. Supp. 426, 429 (S.D.N.Y. 1977).  In that

19  case, the court refused to reform or rescind the agreement, noting that "[e]ven if the parties

20  mistakenly estimated the number of claimants, this error would only be a matter of degree and

21  would not go to the 'heart of the agreement.'"  *Id.* at 430.  Here, the notice process was the best

22  possible – direct mail – and the claims procedure was as easy as it could possibly be.  The Parties

23  did what they could to encourage the highest number of claims, and the rate of claims received

24  was as expected.  The settlement is thus fair, adequate, and reasonable.

25  **2.   Reversion of Any Remaining Settlement Funds to AllianceOne is Appropriate**

26  Pursuant to the Stipulation of Settlement, any amounts remaining in the Settlement Fund

27  after the payment of all claims, expenses, attorneys' fees and costs, and costs of notice and claims

28  administration will be returned to AllianceOne.   Stipulation § 9.8.

Reversion of the unclaimed portion of a settlement fund to a defendant is one of the standard ways in which parties agree to deal with unclaimed funds. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mba v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010) ("[U]nclaimed portions of a class action fund in a private action may properly be returned to the defendant."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (per curiam); Newberg on Class Actions, § 10.15 (4th Ed. 2002).

Reverter clauses provide a useful tool in negotiating a settlement where the total number of eventual claimants is unknown. "A defendant may agree to a higher maximum settlement amount -- which allows more claimants to be fully compensated for their damages if a large number of claims are filed -- in return for possible reversion of a portion of the unclaimed funds." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009). Such reversion "is not objectionable when class members receive full recovery for their damages and the parties agree to the reversion." *Id.* at 812 (citing *Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001)).

"[W]here the parties agree on the distribution of unclaimed class funds, the court should defer to that method of distribution." *Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001). *See also Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807, 815-16 (5th Cir. 1989) (where parties agree to distribution of unclaimed class fund, and agreed distribution is equitable, the court will defer to such agreement).

Because the Parties reached the Settlement, including the reverter clause, through arms-length negotiations, and reversion will only occur, if at all, after all claims are paid in full, any unclaimed portions of the Settlement Fund may properly revert to AllianceOne.

Ultimately, the common fund established by the Stipulation of Settlement here will serve both intended purposes of compensating the Class Members for their injuries and deterring future wrongful conduct. Thus, the amount offered in settlement should be approved by the Court as fair and reasonable.

## E.   THE EXTENT OF DISCOVERY COMPLETED

This case was actively litigated and contested by Defendant at every step of the way. The

Parties engaged in litigation and the discovery process for close to two years before settlement negotiations even began.  Plaintiff's counsel took a number of depositions,, reviewed tens of thousands of records produced, and responded to half a dozen discovery and dispositive motions. In addition, Plaintiff's information technology consultant worked for years on the many productions of data produced in discovery by Defendant and third parties relating to the outbound dial lists and the lists of cell phones called, separating the different groups and finally determining the persons ultimately identified as the final list of Class Members.    See Declaration of Jeff Hansen filed in Support of Motion for Preliminary Approval (Docket No. 109, Ex. 8.) and his Declaration in Support of Motion for Attorneys' Fees and Costs (Docket No. 115, Ex. 5).  Thus, the Litigation had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F.Supp. at 745.    Further, considering that many of the disputed issues between the Parties are legal, and not factual, in nature, the Parties have exchanged sufficient information to make an informed decision about settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

## F.    THE EXPERIENCE AND VIEWS OF CLASS COUNSEL

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979).    The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co*., 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); Manual for Complex Litigation, Third § 30.42 (1995).

Here, it is the considered judgment of experienced counsel that this Settlement is a fair, reasonable and adequate settlement of the litigation.  As set forth in the declarations attached to the Parties' Motion for Preliminary Approval and in support of their Fees Motion, Class Counsel are experienced consumer class action lawyers.    [Docket Nos. 109 & 115, Exs. 6 and 11.] Defense Counsel are also experienced in class action litigation. McCabe Decl., ¶ 2. This settlement was negotiated at arm's length by experienced and capable Class Counsel and also by

Defense Counsel who now recommend its approval.  Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the Class.   Class Counsel have achieved such a result here, and unequivocally assert that the proposed settlement should receive final approval.  Campion Decl., ¶ 15;   Decl. Joshua B. Swigart, in Support of Motion for Final Approval of Class Action Settlement, ¶¶ 11-12.

**G.   THE REACTION OF THE CLASS MEMBERS TO THE PROPOSED SETTLEMENT**

Here, there has been no resistance to the proposed Settlement.  To date, there have been no objections filed or served on the Settlement Administrator.  Solorzano Decl., ¶ 21.  The absence of any objection by a Class Member is an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Warner Communications*, 618 F. Supp. at 746.  In fact, the lack of objections may well evidence the fairness of the settlement.  *See In re PaineWebber Ltd. Litig.*, 171 F.R.D. 104, 126 (S.D. N.Y.), aff'd, 117 F.3d 721 (2d Cir. 1997. Furthermore, only 39 Class Members to date have requested exclusion from the class at the time of filing this Motion.  *Id*. at ¶21.  The absence of objections from Class Members reinforces the notion that the proposed settlement is worthy of approval.  Thus, 66,901 Class Members have filed claims to date, with 64,058 valid claims, with no objections and very few opt outs, at the time of filing this Motion. *Id*, ¶¶ 18, 21-22.   The absence of objections from Class Members reinforces the notion that the proposed settlement is worthy of approval.

**IV.   CONCLUSION**

For the foregoing reasons, the Parties respectfully request the Court grant their motion and enter the attached Final Approval Order submitted with this Motion.

Dated: July 30, 2012                    **LAW OFFICES OF DOUGLAS J. CAMPION**

                                        /s/ Douglas J. Campion____
                                        Douglas J. Campion, Esq.

**HYDE & SWIGART**
San Diego, California

**HYDE & SWIGART**

/s/ Joshua B. Swigart
Joshua B. Swigart, Esq.

Counsel for Settlement Class

**NEIL, DYMOTT, FRANK,
MCFALL & TREXLER**

/s Hugh A. McCabe
Hugh A. McCabe, Esq.

Counsel for Defendant