Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino del Rio South, Ste. 301
San Diego, CA 92108
Telephone:   (619) 233-7770
Facsimile:   (619) 330-4657

Douglas J. Campion, Esq. (SBN: 75381)
**LAW OFFICES OF DOUGLAS J. CAMPION**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Class Counsel

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. ADAMS, SARAH GABANY ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br>v.<br><br>ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,<br><br>Defendant. | CASE NO.: 08-CV-0248 JAH(WVG)<br><br>**CLASS ACTION**<br><br>**DECLARATION OF DOUGLAS J. CAMPION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   August 27, 2012<br>Time:  2:30 p.m.<br>Ctrm:  11<br><br>THE HON. JOHN A. HOUSTON |

I, Douglas J. Campion, declare:

1. I am one of the attorneys for the Plaintiffs in this action and my firm is one of two firms appointed as Class Counsel. I submit this declaration in support of the Motion for Final Approval of the Class Action Settlement. I support the Settlement and urge the Court to give final approval the Settlement as fair and reasonable. I am licensed to practice law before this court and all California state courts and all federal courts located in the State of California. If called as a witness, I would competently testify to the matters herein from personal knowledge.

**Summary of Case History and Settlement.**

2. This matter was brought to the attention of Class Counsel Joshua B. Swigart by Christina Adams, and a Complaint was filed in this Court on February 8, 2008. Prior to the filing and thereafter, Class Counsel initiated a thorough investigation, and conducted relevant factual and legal research. The information learned through this investigation was invaluable during settlement negotiations.

3. After filing this action, Class Counsel and Counsel for AllianceOne Receivables Management, Inc. (AllianceOne" or "Defendant") engaged in extensive litigation for more than a two year period, all as detailed in the Declaration of Joshua B. Swigart in Support of Motion for Award of Attorneys' Fees and Costs and Service Awards to the Named Plaintiffs, Docket No. 115-11, previously filed on July 9, 2012. Finally, after a series of discovery motions, including motions to compel by Class Counsel in which Plaintiffs prevailed, the Parties agreed to mediation with Justice Howard B. Wiener, Ret.

4. After two lengthy all day sessions with Justice Wiener several months apart, the Parties agreed in principle upon a settlement. However, the negotiations about the details of the settlement took well over a year, with several additional in-person and telephonic conferences with Justice Wiener to resolve certain issues. At all times, these activities were non-collusive, and conducted at arm's - length. Finally, a Stipulation of Settlement and Release ("Agreement") was completed and executed by the Parties.

Justice Wiener submitted a declaration to the Court in support of Preliminary Approval summarizing the negotiations and setting forth his support for the Settlement as being fair and reasonable.

5. Throughout this action, Class Counsel used an information technology consultant, Jeff Hansen of Hansen & Levey Forensics, Inc., who was invaluable. He first assisted counsel in Plaintiff's discovery efforts and then worked years reviewing and analyzing the databases provided in discovery by AllianceOne and by third parties that made calls on their behalf. That review and analysis was necessary in order to determine the full extent of the Class and to identify the Class members. It took many months of efforts on Mr. Hansen's part but we finally determined the number of persons in the Class that could be identified from AllianceOne's records was 6,079,411. A Joint Motion for Preliminary Approval was filed and the Court granted the motion on April 23, 2012.

6. The settlement consists of the following:

   a. The Settlement requires the creation of a common fund of a maximum of $9,000,000, the Settlement Fund, to settle this matter and to pay claims for Class Members. The amount paid out to each claimant will be $40.00. However, if too many claims are filed to allow for such $40.00 payment to each claimant, the claims will be paid on a *pro rata* basis. I understand from Gilardi's office that at the time of the filing of the Motion, there were 66,901 claims submitted, but of those, there are only 64,058 valid claims. Based on this number, Defendant will be required to pay the $40.00 amount to each claimant under the Agreement. To date, the 64,058 valid claims filed times $40.00 equals $2,562,320.00 to be paid.

   b. The Settlement Costs are also to be paid from the Settlement Fund. Those include 1) reasonable attorney's fees and costs as approved and awarded by the Court (in our fees and costs motion we have requested 30% of $9,000,000 requested, or $2,700,000); 2) the costs of notice and claims administration ($2,517,954.45); and 3) the proposed Incentive Awards of $10,000 in total, $5,000 to be paid to the

Plaintiff Adams for her efforts in litigating this case, and $2,500 each to Gabany and Messner. A true and correct copy of the invoice in the amount of $2,517,954.45 submitted by Gilardi for all expenses incurred to date, and anticipated to complete their tasks in this case for notice and administration of claims, is attached hereto as Exhibit A.

**Settlement is Appropriate Here and Should be Given Final Approval**

7. Taking into account the burdens, uncertainty and risks inherent in this litigation, the Parties have concluded that further prosecution and defense of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Agreement.

8. The Named Plaintiffs and Class Counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, they believe that it is desirable that the Action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Agreement. They have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

9. Therefore, Class Counsel is requesting that the Court grant Final Approval to the Settlement.

**The Class Definition:**

10. The Class definition as approved in the Preliminary Approval order is as follows:
"[A]ll persons within the United States to whom any telephone calls were made by AllianceOne or any of the other Released Parties between February 8, 2004 and November 30, 2010 to such person's cellular telephone, paging service, specialized mobile radio service, other radio common carrier service or any service for which the called party is

charged for the call, through the use of any automatic telephone dialing system which has the capacity to store or produce numbers (whether or not such capacity was used), including, without limitation, an automated dialing machine dialer, auto-dialer or predictive dialer, or an artificial or prerecorded voice, without such person's prior express consent. Excluded from the Class are: (a) the officers, directors, and employees of AllianceOne, the members of the immediate families of the foregoing, and their respective legal representatives, heirs, successors and assigns, (b) the officers, directors and employees of any parent, subsidiary or affiliate of AllianceOne, and the immediate families of the foregoing, (c) Counsel for AllianceOne and Class Counsel and the members of their respective immediate families; and (d) those individuals identified by the List of Excluded Numbers"

Preliminary Approval Order, p. 2, ¶ 1.

**Notice Given:**

11. In compliance with the Preliminary Approval Order, the independent third-party Claims Administrator Gilardi & Co., LLC ("Gilardi") was hired to oversee the notice and claims administration process in this case. See Declaration of Dennis Gilardi in Support of Joint Motion for Final Approval of Class Action Settlement. Filed herewith. Gilardi provided notice as required in the Preliminary Approval Order. From the numbers provided in the Claims Administrator Tricia M. Solorzano declaration filed herewith, that appears to include mailing the summary notice of the proposed class settlement to the 5,627,963 persons after cleaning up and omitting duplicate persons and incomplete addresses from the final Class Notice list. See Declaration of Tricia M. Solorzano on Behalf of Settlement Administrator Regardong Notice and Claims Process in Support of Motion for Final Approval ("Decl. T. Solorzano"), filed in support of this motion, ¶ 9. In assembling the Class Notice list, as the Parties advised the Court in the Preliminary Approval motion, AllianceOne did not have addresses for approximately 10% of the 6,079,411 identified Class Members, so an effort was made to find addresses for those persons. Of that amount, addresses were found for approximately 301,803 of that 10%. . Id. at ¶ 8. Gilardi received returned mail from the U.S. Postal Service

for 1,305,946 persons after the initial postcard notice mailing. *Id.* at ¶ 15. Of that number, new addresses were found for 1,133,498 persons. *Id.* Thus, 5,457,718 persons in the Class were mailed direct mail notice to what seems to be current addresses. Thus, notice postcards went to 5,457,718 of the 5,627,963 Class Members on the cleaned up Notice List, almost 97%, and more than 91% of the 6,079,411 identified Class Members. The summary notice directed Class Members to the Settlement Website to obtain complete information regarding the case and class settlement. The summary notice also instructed all persons how to submit a claim with Gilardi by either calling the toll-free number, going online to make a claim, or submitting a written claim by traditional mail.

12. In compliance with the Preliminary Approval Order, the Claims Administrator also established a Settlement Website and posted a detailed and full notice explaining the case, proposed settlement, and each Class Member's options. Decl. T. Solorzano, ¶ 10, Ex. A. Gilardi also published the notice in The USA Today on May 23, 2012, issued a press release about the settlement on May 23, 2012, and conducted a targeted online advertising campaign to inform potential Class Members about the Settlement. *Id.* at ¶¶ 6-7, Exs. D, E.

**Claims Procedure and Claims Filed:**

13. The Claims Administrator put in place a claims procedure agreed upon in the Stipulation of Settlement that permitted filing a claim by telephone or online, without the necessity of mailing a claim form. The intent was to make submitting a claim as easy as possible to encourage the filing of claims. If the claimant so desired, they could also instead file a claim form by mail. Class Counsel and defense counsel worked with the Claims Administrator upon Preliminary Approval to make certain the documents and procedures were properly implemented and received weekly notices of submission of claims, opt outs and objections, if any. Those persons receiving a direct mail postcard notice each had a Claim

Identification No. on the notice which could be used to reference the claimant's information. Those claims were identified on Gilardi's Weekly Statistics Report as "Known Claims". To date, there have been claims Gilardi has designated as "Unknown Claims" that were filed by persons not receiving the direct mail postcard. This group is included in the Class because a number of persons called by AllianceOne during the Class period on their cellphones were not identified in AllianceOne's records by name, address or cell phone number. However, it was agreed these persons could file claims if they satisfied certain conditions, *i.e.*, declare under penalty of perjury they were called on their cell phone, and provide the cell phone number and their name and address. If so, that claim is valid. See Agreement, §9.4. To date 4,428 "Unknown Claims" have been filed. Lastly, there is a group of persons that are on the List of Excluded Persons, i.e., those persons whose creditor had obtained prior express from them to be called on their cell phones, and therefore were not on the Class Notice list and did not receive a postcard notice. 49 persons in that group attempted to file a claim but were denied. See Decl. T. Solorzano, ¶¶ 13-14. To date, there have been 64,058 claims that have been validated by Gilardi. *Id.* at ¶ 18. . In my experience, it is common to have a lower claims rate in consumer cases than in other class actions, for example in securities cases or in wage and hour cases. However, with the number of valid claims filed to date, at $40.00 per claim, they have a substantial value of $2,562,320.00, with additional time left in the claims period.

**Opt Outs and Objections:**

14. To date, there have been 39 requests for exclusion from the settlement. See Decl. T. Solorzano, ¶ 21. There have been no objections. *Id.* at ¶ 22.

**Adequacy of Settlement:**

15. This is a statutory damages case. No Class member has lost any money as a result of the Defendant's actions, other than their carrier's billing them for the cost of Defendant's calls and messages. Therefore, the deterrent effect of statutory

damages has been met, and the proceeds will be divided among the persons called. In other words, the Class members are not getting a percentage of money they have expended; they are receiving money as statutory damages for cell phone calls made. Therefore, obtaining a potential $9,000,000 maximum settlement for the Class is an exemplary settlement. As a result, in my opinion, based upon my thirty-four years of experience in civil litigation and twenty-two years of experience in litigating class actions, and based upon the facts of this case, the number of class members, and the other circumstances, I believe this settlement is fair and reasonable. Therefore, I believe the settlement merits Court approval.

**Class Counsel's Experience:**

16. If the Court is inclined to review my credentials relating to the Final Approval issues, I have outlined my experience in the Fees Declaration (Docket No. 115-6) filed on July 9, 2012 with the Motion for Attorneys' Fees and Costs to be heard at the same time as this motion. I am not repeating them here, for sake of brevity.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 30, 2012 at San Diego, California, pursuant to the laws of the United States.

/s/ Douglas J. Campion

Douglas J. Campion

# EXHIBIT A



3301 Kerner Blvd.
San Rafael, CA 94901
P: (415) 461-0410
F: (415) 461-0412

Sent via Email                                                                July 20, 2012

AllianceOne Receivables Management, Inc.

Re:   **Adams v. AllianceOne**
      Client Matter Number 3533
      Invoice: 3533-3

Professional services, out-of-pocket expenses and third party expenses from June 18, 2012 through case completion in connection with Claims & Deficiency Processing, Telephone Support, Distribution, Reporting and Tax Compliance for the **Adams v. AllianceOne** matter.

**Processing**
| | | |
|---|---:|---:|
| Case Management | $ 5,600.00 | |
| Claims Processing – 35,738.00 @ $0.50 | 17,869.00 | |
| Deficiency Processing | 560.00 | |
| Telephone Support | | |
|    Line Charges/Taxes/Fees | 785.00 | |
|    Staff Time | <u>6,632.50</u> | |
| Subtotal Processing | | $ 31,446.50 |

**Distribution**
| | | |
|---|---:|---:|
| Settlement Fund Management | $ 450.00 | |
| Distribution Calculation | 900.00 | |
| Distribution Preparation | 3,600.00 | |
| Check Issuance – 9,000 @ $1.25 | 11,250.00 | |
|               6,000 @ $1.00 | 6,000.00 | |
|             30,000 @ $0.95 | 28,500.00 | |
|             39,200 @ $0.85 | 33,320.00 | |
| Telephone Support | 10,000.00 | |
| Staff Time Check Reissues | 1,350.00 | |
| Final Accounting Services | <u>2,250.00</u> | |
| Subtotal Distribution | | 97,620.00 |

**Reporting**
| | | |
|---|---:|---:|
| Reports/Declarations | $ 1,350.00 | |
| Tax Compliance – 2 yrs | <u>5,000.00</u> | |
| Subtotal Reporting | | <u>6,350.00</u> |

| | | |
|---|---|---:|
| THIS INVOICE | | 135,416.50 |

continued

<u>Adams v. AllianceOne</u>
Client Matter Number 3533
Invoice: 3533-3
Page 2

PREVIOUSLY INVOICED

| | | | |
|---|---|---|---|
| Invoice 3533-1 | April 25, 2012 | $1,868,724.00 | |
| Invoice 3533-1A | June 6, 2012 | 204,581.32 | |
| Invoice 3533-2 | July 5, 2012 | 309,232.63 | |
| | | | 2,382,537.95 |

TOTAL INVOICED TO DATE                                        2,517,954.45

LESS PAYMENTS RECEIVED                                      <2,073,305.32>

AMOUNT DUE                                                  $ 444,649.13

 

**TOTAL ADMINISTRATION FEES**                  **$2,517,954.45**