1

2

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12 CHRISTINA M. ADAMS AND SARAH GABANY, ON BEHALF OF 13 THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Case No.: 08 CV 0248 JAH WVG **CLASS ACTION** |

12 CHRISTINA M. ADAMS AND SARAH
GABANY, ON BEHALF OF
13 THEMSELVES AND ALL OTHERS
SIMILARLY SITUATED,

14                     Plaintiffs,

15 vs.

16 ALLIANCEONE RECEIVABLES
MANAGEMENT, INC.

17                     Defendant.

18

19

20

21

Case No.: 08 CV 0248 JAH WVG

**CLASS ACTION**

**DECLARATION OF DENNIS GILARDI
IN SUPPORT OF JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

Date:          **August 27, 2012**
Time:          **2:30 p.m.**
Ctrm:   **11**

**THE HON. JOHN A. HOUSTON**

22

23  I, DENNIS A. GILARDI, declare and state as follows:

24

25                              **INTRODUCTION**

       1.      I am the founder and principal of the Larkspur Design Group ("LDG") and

26  Gilardi & Co. LLC ("Gilardi"), both of which are located at 3301 Kerner Blvd., San

27  Rafael, California.   I am and/or have been Special Claims Master or Receiver for the

28  Securities Exchange Commission, the Commodities Futures Trading Commission, all 50

-1-

1   States Attorneys General, and the Federal Trade Commission.  I have been involved in

2   class action claims administration since 1977, when I was an audit partner at the

3   accounting firm of Laventhal & Horwath.  In 1984, I formed Gilardi to assist attorneys

4   with securities, antitrust, and consumer protection class actions and other similar matters.

5       2.    Gilardi is one of the largest full-service class action claims administrators in

6   the United States, specializing in administrative services that support due process in class

7   action litigation.  Gilardi has provided cost-effective administration in more than 3,000

8   settlements, with distributions of assets greater than $20 billion.  Through this time, we

9   have crafted our methods for the efficient management of cases of all sizes and

10  complexities. On average, Gilardi provides annual escrow agent services for over 900

11  Qualified Settlement Funds and manages assets in excess of $1.5 billion.

12      3.    LDG frequently works as an in-house advertising agency for Gilardi and for

13  more than a quarter-century, LDG has specialized in designing, developing and

14  implementing unbiased, legal notification plans.  In my role, I oversee all of my firm's

15  activities as they relate to notice services.

16      4.    I submit this declaration in support of the Joint Motion for Final Approval of

17  Class Action Settlement.  In addition, Tricia M. Solorzano, the case administrator working

18  for Gilardi on this case, is filing a declaration with this motion entitled Declaration of

19  Tricia M. Solorzano On Behalf of Settlement Administrator in Support of Motion for Final

20  Approval of Class Action Settlement ("Solorzano Decl.") regarding the work our firm

21  completed and sets forth additional details therein about the notice and claims

22  administration.

23      5.    This Declaration is based upon my personal knowledge, information

24  provided by Class Counsel and Counsel for AllianceOne, research regarding the

25  Litigation, and information obtained by LDG's staff and from reliable industry sources,

26  including Simmons Market Research Bureau, Inc. (Simmons), MediaMark Research, Inc.

27  (MRI), and Standard Rate and Data Service (SRDS).  The information is of the type that is

28  reasonably relied upon by professionals in the fields of legal notification, media,

1   advertising and class action administration.  If called as a witness, I could and would
2   testify competently concerning the matters expressed in this declaration.

3          6.       The notice procedures set out in the Court's April 18, 2012, Preliminary
4   Approval Order have been fully and properly followed and implemented.

5          7.       To implement the Notice Plan in this case, Gilardi: (1) arranged for direct
6   first-class mailing of a summary notice postcard to those potential Class Members for
7   whom addresses were located by AllianceOne as well as those Class Members who could
8   be located through reverse address look-up services performed on the telephone numbers
9   provided,  (2)  created  and  maintained  a  Settlement  Website,
10  www.allianceonesettlement.com, where important case information, including the full-
11  length Notice, was posted, (3) published one time in the national edition of USA Today,
12  (4) disseminated a press release through PR Newswire, (5) arranged for sponsored link and
13  banner advertising on the Internet, (6) received and processed objections, requests for
14  exclusion and other correspondence, if any, in response to the Settlement Notice; and (7)
15  mailed the CAFA notice to the appropriate Federal and State officials on behalf of the
16  Defendant.

17                          **DIRECT INDIVIDUAL NOTICE**

18         8.       When practicable and possible, direct notice is considered to be the ideal
19  form of notice to class members.  Direct mailed notice provides 100% reach, less any
20  returned undeliverable mail ("RUM") from outdated addresses.  Gilardi provided class
21  data preparation services and coordinated the printing and mailing of the Notice postcards.
22  As detailed in the Solorzano Decl., prior to the Notice mailing, Gilardi compiled the list of
23  approximately 620,356  mobile phone numbers contained in the Notice Database that did
24  not have corresponding postal addresses, and performed reverse address lookups to
25  generate a mailing address for 301,803 of those persons.  The success rate for generating
26  those addresses was more than 48%.  Once the complete list of postal addresses was
27  compiled for direct notice, the addresses were updated through the United States Post
28  Office's National Change of Address Update system ("NCOA").  The NCOA updated the

3

1   address for anyone who had filed a "change of address" card with the post office within
2   the last 4 years.  In addition, Gilardi provided address search services for any returned
3   undeliverable mail, updated the case database with any new addresses found, and re-
4   mailed the Class Notice to those addresses.

5       9.      For Notice purposes, reach is defined as the opportunity to be exposed to a
6   given media schedule over a given period of time, or in other words, the opportunity to be
7   exposed to the Class Notice over a given period of time.  Addresses were provided for
8   mailing direct mail postcards to 5,627,963 of the estimated 6,079,411 Class Members in
9   the Notice Database for whom there were records, and cell phone numbers for the other
10  617,332 Class Members for whom there are records but no addresses in the Notice
11  Database.  Thus, the number of direct mail postcards mailed to Class member in the initial
12  mailing  equates to approximately 92.5% of the 6,079,411 members of the Class that are in
13  the Notice Database before omitting the duplicates and bad addresses.   We received
14  1,305,946 unique Postcard Notices returned by the USPS with undeliverable addresses.  Gilardi
15  performed a "skip trace" search for these Class members and found 1,133,498 new addresses.
16  Gilardi then re-mailed Postcard Notices to the updated addresses.    Thus, 5,457,718 Class
17  Members ( - almost 97% - of the 5,627,963 identified Class Members) with addresses
18  received Direct Notice.

19                              **CASE WEBSITE**

20      10.     Gilardi created a case-specific website, www.allianceonesettlement.com,
21  and posted case-specific documents, a long form notice in a question and answer format,
22  and a toll-free number through which Class Members could request further information.
23  All critical information about Class Members' rights was included and no required
24  information was omitted.  Class Members were able to view and download documents in
25  PDF format as well as email the Settlement Administrator for information.    The Long-
26  Form Notice was posted in Spanish language as well.

27

28

**PUBLICATION NOTICE**

11.     To supplement the direct notice mailing, the parties also provided notice via a formal notice form on the website, publication in the national edition of USA Today, sponsored links on major search engines, and banner advertising using sites related to debt and collections content.   USA Today provides a large national circulation and is commonly used in class action notice plans for supplemental notice when a direct mailing is also being utilized to reach the class members.  The publication in USA Today occurred on May 23, 2012.   A true and correct copy of the publication is attached to the Solorzano Declaration as Exhibit D.

**PRESS RELEASE**

12.     The Parties to the Settlement prepared a party-neutral informational press release which I reviewed and approved.  A press release remains one of the most cost effective and powerful methods of notice.  In this case, a press release focused to hundreds of media outlets that write about the mobile phone, debt collection and consumer watchdog industries will generate earned media coverage.  Dissemination of the press release can be further specified to target specific areas of interest such as class actions and also directed to various news blogs.  LDG utilized PR Newswire to disseminate the press release. A true and correct copy of the press release is attached to the Solorzano Decl. as Exhibit E.

**SPONSORED LINKS AND BANNER ADVERTISING**

13.     Similar to the phone book, the sponsored links portion of the campaign targeted those individuals specifically looking for information about the case.   An individual receiving the postcard notice or reading the summary notice published in USA Today might not remember the exact website address, but would instead go to Google or Bing and type in a few keywords remembered from the text of the card or publication.  In order to ensure the case website was positioned high in any search results related to those keywords, LDG implemented a Sponsored Links campaign.  LDG developed a list of keywords, analyzed the traffic for those keywords, and placed bids for link positions

1   related to those keywords.  For individuals who read the notice and went to Google to

2   search, LDG placed bids on case-related keywords the individual would be likely to use so

3   that the link to the case website would be positioned within the top five results for any

4   case-related search.  The campaign was monitored on a daily basis and the budget was

5   adjusted to maximize impressions and click-throughs to the website.  Samples of the

6   sponsored links are attached as Exhibit A.

7      14.    While the sponsored links were designed to reach those looking for

8   information about the case, the contextual or banner portion of the online efforts was

9   designed to reach those who might not have been looking specifically for information

10   about the case, but who might have been browsing content relative to the subject matter.

11      15.    For the display advertising component of the online campaign, LDG

12   primarily utilized the Contextweb Network.[1]  Contextweb utilizes a unique audience

13   targeting platform to help identify audiences not only by core demographics such as age

14   and income, but by characteristics that identify where and how they are consuming

15   content.  LDG created the artwork and content for the banner ads and generated

16   approximately 10 million impressions that were served through Contextweb's network of

17   websites, including sites that focus on debt and collections content as well as the top 250

18   sites on the web.  Samples of the banners are attached as Exhibit B.

19                          **TOLL-FREE NUMBER**

20      16.    Gilardi also set up and maintained a Toll-Free Number, which allowed

21   callers to request copies of the Direct Mail Notice and the Stipulation of Settlement by

22   accessing the Settlement Website, and to determine whether they were Class Members

23   once they provided appropriate identifying information.  The Toll-Free Number was

24   operational from the mailing of the Direct Mail Notice through the Effective Date.

25                              **COSTS**

26      17.    The total cost of notice and claims administration procedures to complete all

27

28   [1] The  ContextwebAd Exchange is the only true Real-Time marketplace for buying and selling ads using patented Contextual
Targeting technology:  ContextAd.  (Patent Publication No.: US-2002-0123912-A1).

of our tasks in this case is $2,517,945.45.  A copy of the final invoice is submitted attached to Class Counsel Douglas J. Campion's declaration.

## **TOTAL REACH**

18.    Based on the Direct Mail Notice, and estimates of reach for the settlement website, toll-free number, publication notice, press release, sponsored links, and banner advertisements, the Notice Plan is estimated to have reached more than 70% of Class members.


I declare under penalty of perjury that the foregoing is true and correct.  Executed under the laws of the United States on this 30th day of July, 2012, at San Rafael, California.


_____

Dennis A. Gilardi

LEGAL_US_W # 72177027.1

7

# EXHIBIT- A

**AllianceOne Settlement – Google & Bing Sponsored Links Screenshots**
**July 6, 2012**

**Google Search – Top Sponsored Link Placement (July 5th)**



**Google Serach – Top Sponsored Link Placement (July 6th)**



**Google – Sponsored Link (search keyword: "phone settlement)**



**Yahoo – Top Sponsored Link Placement**



**Yahoo – Top Sponsored Link Placement**



**Aol.com (Google Search Network) - Top Sponsored Link Placement**



**Aol.com Search (Google Search Network) – Sponsored Link**



# EXHIBIT- B

300 x 250



728 x 90



468 x 60

