Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino del Rio South, Ste. 301
San Diego, CA 92108
Telephone:   (619) 233-7770
Facsimile:     (619) 330-4657

Douglas J. Campion, Esq. (SBN: 75381)
**LAW OFFICES OF DOUGLAS J. CAMPION**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Class Counsel

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. ADAMS, SARAH GABANY ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>                    Plaintiffs,<br>v.<br><br>ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,<br><br>                    Defendant. | **CASE NO.:** 08-CV-0248 JAH(WVG)<br><br>**CLASS ACTION**<br><br>**CLASS COUNSEL'S OPPOSITION TO OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   August 27, 2012<br>Time:   2:30 p.m.<br>Ctrm:   11<br><br>**THE HON. JOHN A. HOUSTON** |

## I. INTRODUCTION

This settlement was overwhelmingly approved by the Class. Out of the more than 5,000,000 Class Members who were mailed and received direct mail notices, only six persons filed objections. Only 71 persons opted out of the Settlement. Neither the U.S. Attorney General nor a single state attorney general objected. Those are powerful indicia that the settlement is fair, reasonable, and adequate and deserves final approval.

Four of the six objectors complain that AllianceOne should pay more, one has unfounded concerns about the *cy pres* aspect and one objection was filed by Gordon Morgan, an attorney who raises a number of issues, as detailed below. However, given the nature of this Settlement, the tremendous relief it provides, the scope of the notice, and the overwhelmingly positive response of the Class, none of these objections should be allowed to deprive the Class Members of the benefits they are entitled to under the Settlement. For the reasons stated herein, the Court should overrule the objections and approve the settlement.

## II. RESPONSE OF THE SETTLEMENT CLASS

The response of the Settlement Class was overwhelmingly in favor of the Settlement. Over 5,000,000 notices were sent by direct mail to Class Members, and the Notice was also published in the national publication USA Today, and was disseminated using special internet advertising procedures.  See Supplemental Declaration of Tricia M. Solorzano on Behalf of Settlement Administrator Regarding Notice and Claims Process in Support of Motion for Final Approval of Class Action Settlement, ("Solorzano Supp. Decl.") filed herewith. Yet out of all those Class Members, only 71 opted out and six filed objections. *Id.*, Exhibits F and G, respectively. Those infinitesimally small numbers plainly establish the settlement is "adequate":

> [A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. *If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.*

*In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (quotations and citations omitted, emphasis added), aff'd, 396 F.3d 96 (2d Cir. 2005); *accord, In*

*re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objections supporting finding that settlement was fair); *see also Wal-Mart Stores, Inc. v. Visa USA, Inc.,* 396 F.3d 96, 118 (2d Cir. 2005) (18 objections out of 5 million class members is evidence of "overwhelming [ ] approval"); *Bryan v, Pittsburgh Plate Glass Co.,* 494 F.2d 799, 803-04 (3d Cir. 1975) (approving class settlement even though more than 20% of class objected); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors represented fewer than 4% of class). [1]

Thus, objections from only six persons confirm the adequacy of the Settlement here.

### III. THE SIX OBJECTIONS RELATING TO THE AMOUNT RECOVERED AND THE CY PRES QUESTIONS SHOULD BE OVERRULED.

Four objections were received that essentially argue AllianceOne did not pay enough. Attorney Russell objects "only because they [AllianceOne] are getting off easy" but that is the extent of the objection, with no authority or other argument. *See* Solorzano Supp. Decl., Ex. G. Objector Holland [2] argues that the TCPA imposes statutory damages amount of $500 for "each illegal pre-recorded call" and objects because this Settlement did not obtain that amount, which would total hundreds of millions, or perhaps billions, of dollars in settlement. [3] *Id.,* Ex. G. Objector Osawe feels that the settlement fails to adequately compensate him personally for the emotional distress he suffered from "persistent telephone harassments" by AllianceOne. *Id*. at Ex. G. Objector O'Neill argues that $40.00 is not enough of a recovery for him and objects to the reversionary aspect of the settlement. *Id*. at Ex. G. However, he had the option to opt out and pursue his claim, but did not. Thus, those four objectors argue generally that the deal could have

---

[1] Courts frequently approve settlements where the percentage of objections is many times greater than in this case. *See, e.g., TBK Partners, Ltd. V. W. Union Corp*., 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of approximately 56% of class); *Cotton v. Hinton*, 559 F.2d 1326,1333 (5th Cir. 1977) (approving settlement over objections of counsel purporting to represent almost 50% of class).

[2] It should be noted that the Claims Administrator does not believe Mr. Holland is a Class Member. See Solorzano Suppl. Decl., ¶21.

[3] $500 times 6,000,000 persons would equal 3 billion dollars.

been better.  With all due respect, such objections are not a basis upon which to deny approval. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

All settlements are a compromise and the $9,000,000 maximum payout here is certainly fair, reasonable and adequate.   All Class Members would unquestionably want to recover more money for their claims; that is only human nature.  But this Settlement of a maximum fund of $9,000,000 was negotiated at arms' length after years of litigating this case, and mediated with experienced counsel over several sessions by the Hon. Howard B. Wiener, (Ret.).  Justice Wiener has previously filed a declaration attesting to his belief in the reasonableness of the settlement.  Docket No. 109-5.  Furthermore, in response to Objector Holland's argument about a minimum recovery per call, 47 U.S.C. § 227 (b)(3)(B) does not state the statutory damages cannot be compromised in settlement.  It is simply not plausible to attempt to settle this case in the billions of dollars of damages.  In a TCPA case, a court has found that the TCPA does not require $500 per violation, but that the court may award "up to" $500 per call, and awarded 7 cents per violation as equitable for a fax case, given the amount of paper and ink used for each fax. *Texas v. American Blastfax, Inc.,* 164 F.Supp.2d 892, 900-901 (W.D. Tex. 2001).

Furthermore, courts often view statutory damages claims with alarm because of the overwhelming liability exposure they can create when consolidated in a class action. *See, e.g., Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13, 22 (2d Cir. 2003); *see also In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-51 (N.D. Ill. 2002), appeal dismissed, 346 F.3d 734 (7th Cir. 2003) (declining to certify a class on the ground that the available statutory damages would be "grossly disproportionate" to any actual harm suffered by the plaintiffs).

It must be remembered there is a strong judicial policy in favor of settlement in the class action context. *Fulford v. Logitech, Inc.*, No. 08-cvg-02041 MMC, 2010 U.S. Dist. LEXIS 29042, at *5 (citing *Manual for Compl. Litig.*, Fourth, §30.42 (2004) ("([T]he interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'") The very nature of a settlement is compromise in the interest of expeditious and cost-effective conclusion of the litigation. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1291 (9th Cir. 1992), ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." (quotations and citations omitted).

Furthermore, Plaintiffs' case involved many risks, which could have resulted in recovering nothing. *See, e.g., White v. Experian Information Solutions, Inc.,* No. SACV-05-1070 DOC (MLGx), 2011 WL 2972054, at *8 (C.D. Cal. July 15, 2011) ("Courts . . . should tread cautiously when comparing the amount of a settlement to speculative figures regarding what damages 'might have been won' had [plaintiffs] prevailed at trial'"). Furthermore, if billions had been obtained at trial, Plaintiffs would have faced the "ruinous liability" arguments. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) ("[w]e reserve judgment as to whether a showing of 'ruinous liability' would warrant denial of class certification" in an action brought under a federal consumer statute). In any event, what should not happen here is that the Court review the merits of the case based upon an objection challenging its sufficiency. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.") Such objections regarding the sufficiency of the Settlement Fund "offer nothing more than speculation about what damages 'might have been' won had they prevailed at trial." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). The amount of settlement results from reasonable compromise among the parties. Therefore, those objections to the amount of settlement and amount per claim should be overruled.

Objector Orsett only appears to object because he has questions about the *cy pres* "charitable organization" and how they are included in the settlement. *See* Solorzano Supp. Decl., Ex. G. His argument is apparently based upon a belief that a charitable organization will receive a portion of the settlement, thereby reducing each Class Member's share. He argues the "excess should be split among the class members (the million dollars mentioned) not to anybody else, in my opinion". However, he misconstrues the *cy pres* provision, and regardless of the argument's merits, it is inapplicable because the minimum number of claims was reached, obviating the need for a *cy pres*. The parties negotiated a provision requiring that a minimum amount of $1,000,000 would be paid for claims, or if insufficient claims were received to justify payment of $1,000,000, the difference between the claims received and $1,000,000 would be paid to a *cy pres* charitable organization. Settlement Agreement, Section 9.7, Docket No. 109-1. It

1  was therefore possible a *cy pres* organization would have received a portion of the Settlement
2  proceeds.  However, as the Court can see from the final numbers, a sufficient number of claims
3  were received to make the $1,000,000 minimum payment provision unnecessary.  *See* Solorzano
4  Supp. Decl., ¶ 18, stating there have been 63,573 valid claims received. That equals settlement
5  payments of $2,542,920.00.  Therefore, there is no *cy pres* payment required and therefore, this
6  objection should be overruled.

### IV. THE OBJECTIONS OF ATTORNEY GORDON B. MORGAN SHOULD BE OVERRULED.

Only two days before filing this brief, on August 20, 2012, and several days after the August 16, 2012 deadline for filing objections had passed, Class Counsel and defense counsel received the objection of Gordon B. Morgan of Corpus Christi, Texas.   From the postmark, it appears it is timely mailed, mailed on the last day to object, August 16.  From the language in the objection, it appeared that it was not a typical *pro se* objection. Quick research to see if Objector Morgan was a "professional objector" indicated that he is or was an attorney licensed to practice in Texas, but did not appear to be a "professional objector". [4]  In any event, attorney or not, the Morgan objections are not well taken.

First, Objector Morgan argues that somehow the Class was not informed that the costs of notice and claims administration would be paid from the Settlement Fund.  *See* Solorzano Supp. Decl., Ex. G.  He argues that the Notice was defective because from the language in the Notice "this settlement appears to be" a case in which $9,000,000 was obtained, and that after paying 25% in fees, he surmises the Class would likely get approximately $6,750,000.  Objector Morgan argues that instead the Class will get less than $4,000,000 out of the Fund because the costs of

---

[4]   Research in the past 24 – 48 hours since receipt of the objection located an Order (Dkt. No. 2) filed in the United States District Court for the Northern District of Texas entitled *In Re Gordon Blaine Morgan, Esq.*, Case No. 3:12-mc-00064 – P, filed July 22, 2012 and signed by Judge Jorge Solis accepting Mr. Morgan's resignation from practicing law before that Court based upon the Supreme Court of Texas accepting Mr. Morgan's resignation in lieu of discipline and cancelling counsel's law license in April, 2012.  He may or may not be a licensed attorney at this time.

1  notice and claims administration will in fact be paid from the Fund, reducing the amount of the

2  Fund available for paying claims. He feels that fact was not adequately stated in the Notice. [5]

3        The Objector's claim that the Notice did not adequately state the costs of Notice and

4  claims administration were to be paid from the Settlement Fund is simply not true.  First, the

5  Notices were the same Notices as preliminarily approved by this Court in the Preliminary

6  Approval motion.  See Preliminary Approval Order, Docket No. 113.  Nothing was changed to

7  excise any information now claimed by the Objector to be missing.  Second, Paragraph 11 of the

8  Preliminary Approval Order entitled "Payment of Notice Expenses" states that the Notice

9  Expenses shall be paid into the Settlement Fund Account as set forth in the Settlement

10  Agreement, and states the that the remaining Administrative Expenses and Notice expenses "shall

11  be paid from the Settlement Fund" and that "[s]uch Notice Expenses and other Administrative

12  Expenses shall be part of and not in addition to the Maximum Payment", and referred to the

13  relevant section of the Settlement Agreement.  Third, the summary postcard direct mail Notice

14  stated that the amount in the Fund would be paid to persons filing claims *after* deducting

15  incentive awards to the plaintiffs, "*certain administrative expenses*", attorneys' fees and litigation

16  costs, and perhaps paying a *cy pres* award.  *See* Solorzano Supp. Decl., Ex. B.  That summary

17  Notice also directed the recipient to the settlement website where the full Notice was posted. *Id*.

18  Fourth, that full Notice clearly states that the costs of Notice and claims administration would be

19  paid from the Fund. *Id*., at Ex. A.  The Court need look no further than Paragraph 7 of that

20  Notice (also at Docket No. 116-9) to overrule this objection as it clearly states the costs of notice

21  and claims administration will be paid out of the fund:  "A Settlement Fund in the maximum

22  amount of $9,000,000 will be set aside by AllianceOne to pay 1) all such claims; 2) *the cost of*

23  *notice and claims administration*;. . ." and other items and deducted from the Fund.   Solorzano

---

[5]   He also objects because he claims the "notice does not disclose the amount of the costs of administration and notice." That cost is something that should not affect the amount of the claims paid, as each claimant is to receive $40.00, regardless of the costs of notice and claims administration.  Only if the number of claims submitted was large enough to in total exceed the amount remaining after all Settlement Costs are deducted from the $9,000,000, would the $40.00 per claim be affected, and then each would be paid on a pro rata basis.  That was disclosed in the Notice, ¶ 8, Solorzano Supp. Decl., Ex. A. Even the Summary Notice indicated that the maximum amount to be received would be $40.00, but it also stated "How much each approved Class Member receives will depend on how many people make claims that are approved. *Id*., Ex. B, at "Can I get Money from the Settlement?"

Supp. Decl., Ex. A. In Paragraph 4, that Notice also repeats the statement contained in the summary notice that the term "Administrative Expenses", defined in the Settlement Agreement as including Notice and claims administration expenses, will be deducted from the Settlement Fund. Furthermore, in Paragraph 23 the Notice directs anyone with any questions about the Settlement to the Settlement Agreement posted on the settlement website, or filed with the Court. *Id.* That Settlement Agreement contains all the details about the costs of notice and claims administration, set forth in Sections 1.1 (defines "Administrative Expenses" as Notice Expenses and claims administration expenses); 1.33 (defines "Notice Expenses"); 5 (details how the Administrative Expenses shall be deducted from the Settlement Fund and how the payments for the Notice and claims administration shall be paid from the Fund or as an advance on the Fund, *see*, Sections 5.1.2 – 5.1.3); 8.5 details "Payment of Administrative Expenses" from the Fund amounts; and 8.7.2 states that in the event of non-approval, or cancellation by the parties, Defendant shall not receive any refund for amounts paid to date for Notice from the amounts refunded from the Settlement Fund Account. Thus, the objection that the Notice process failed to state that the cost of Notice and claims administration expenses would be deducted from the Settlement Fund is simply without merit and should be overruled.

Objector Morgan also argues that the parties do not provide "the specifics of their efforts to provide mailed notice to ALL class members, including the total number of class member, how many letters were sent, and what they did with any returned mail and the volume of returned mail." That objection may be included as a "boiler plate" objection because a review of the Court's file or the Settlement Website would reveal that weeks before its filing, on July 30, 2012, Tricia M. Solorzano, employee of the Claims Administrator Gilardi & Co., LLC, filed a declaration detailing all of the answers to those questions. See Docket No. 116-7; paragraphs 8 - 10, 15.

Objector Morgan also objects to the $10,000 incentive awards, in total, to be paid to the three class representatives. However, there is no argument as to why these are excessive, nor any authority cited in support of the objection. For the reasons set forth in the brief filed in support of

1   Class Counsel's request for payment of incentive awards, Docket No. 115-1, the Court should
2   overrule that objection as the payment and amount of such awards are reasonable and justified.
3     Objector Morgan then makes what is likely the most often repeated objection in class
4   actions: the attorneys are seeking to be paid too much.  Here he is objecting on two grounds.
5   First, he is claiming the fees awarded based upon a percentage of recovery should only be on the
6   "$9,000,000 fund less cost of notice and cost of administration" and argues without any authority
7   in support thereof that "[c]ost of notice and cost of administration should not be measured as a
8   percentage of the recovery".  Second, Objector Morgan also claims the fees awarded based upon
9   a percentage of the recovery should be no more than 25%, not the 30% requested.
10     Both objections should be overruled for the reasons discussed at length in Class Counsel's
11   brief in support of their fees and costs request.  See Docket No. 115-1. To summarize, in response
12   to the first argument, the Ninth Circuit permits the percentage of the fees to be computed on the
13   *total amount that was available* to the Class in the Settlement Fund, here the $9,000,000.  *See*
14   *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).
15     As to the second argument, analysis of the factors from *Kerr v. Screen Extras Guild, Inc*.,
16   526 F.2de 67, 70 (1975), addressed in Class Counsel's fees brief, confirm that a 30% percentage
17   of recovery fee is justified here.  Objector Morgan does not address any of the arguments made in
18   that brief and  does not challenge any of the facts submitted, despite having access to the brief and
19   all supporting documents and having ample opportunity to challenge each of those arguments.
20   Instead, Objector Morgan chose to just object generally to the fees requested as excessive and
21   perhaps hopes his argument is accepted in order to perhaps allow him to claim a percentage of
22   those fees saved by his objection.  Regardless of the reasons for the fees objection, that objection
23   has no merit and should be overruled.
24     Furthermore, in reviewing the objections to the 30% percentage of fee request here, the
25   miniscule number of objections to the requested fee  supports Plaintiffs' request.  *See Torrisi v.*
26   *Tucson Elec. Power Co*., 8 F.3d 1370, 1378 (9th Cir. 1993); *see also In re Rite Aid Sec. Litig*., 396
27   F.3d 294, 305 (3d Cir. 2005) (finding that district court did not abuse its discretion by finding that
28   the absence of substantial objections by class members to fee request weigh in favor of approval);

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005) (approving fee request despite four objections).

## V.   CONCLUSION

For the reasons stated herein, and for the reasons set forth in the Supplemental Memorandum of Points & Authorities in Support of Final Approval and in Support of Class Counsel's Request for Fees, Costs and Incentive Awards, Class Counsel respectfully request that this Court grant final approval to the Class Action Settlement and award the attorneys' fees, costs and incentive payments as requested.

Respectfully submitted,

**LAW OFFICES OF DOUGLAS J. CAMPION**

Date: August 22, 2012            /s/ Douglas J. Campion_____

Douglas J. Campion

**Hyde & Swigart**

Class Counsel