Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
(619) 233-7770
(619) 297-1022

Douglas J. Campion, Esq. (SBN: 75381)
doug@djcampion.com
**LAW OFFICES OF DOUGLAS J. CAMPION**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christina M. Adams, Sarah Gabany, and Michael Messner, on Behalf of Themsleves and All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>AllianceOne Receivables Management, Inc.,<br><br>Defendant. | **Case No: 08-CV-0248 JAH(WVG)**<br><br>**CLASS ACTION**<br><br>**CLASS PLAINTIFFS' MOTION FOR APPEAL BOND**<br><br>**Date: December 17, 2012**<br>**Time: 2:30 p.m.**<br>**Crtrm: 11**<br><br>**Judge: Hon. John A. Houston** |

## I. INTRODUCTION

Having never appeared in this case during its pendency, and having filed boilerplate, internally inconsistent, and meritless written objections to its settlement, two sets of objectors have filed notices of appeals. The first two are joint objectors, Mary Margaret Smith, Eric B. Nelson and the second, an individual objector Gordon Morgan, ("Objectors" or "Smith, Nelson and Morgan"). Both noticed last-minute appeals of this Court's September 28, 2012 Order granting for final approval of the class action settlement [See Dkt. No. 137] and Order granting class counsel's motion for attorney's fees, costs, and service awards. [See Dkt. No. 137]. Their appeals will delay distribution of millions of dollars in settlement funds to over 64,000 members of the Class who are eligible for monetary relief and submitted Claim Forms. And all not towards the goal of protecting Class Members' interests, but solely to further their own self-interests.

Through this motion, Plaintiffs ask that this Court impose an appeal bond upon Smith, Nelson and Morgan, jointly and severally, to ensure payment of appellate costs Plaintiffs will be entitled to in the likely event the appeal is not successful. See Fed. R. App. P. 39(a) (providing for costs taxed against appellant where appeal is dismissed or judgment is affirmed); see also Fed. R. Civ. P. 38 (providing for damages and single or double costs to the appellee where an appeal is found to be frivolous). Federal Rule of Appellate Procedure 7 allows the District Court to require an appellant to file a bond to ensure payment of costs on appeal. Plaintiffs respectfully submit that an appeal bond of $64,536.69 is necessary to ensure payment of appellate costs in this case. [1]Included in the requested bond amount are (1) the estimated cost to the class of $15,000 in connection with preparation of the record on appeal and transcript costs; (2) estimated cost to the class of $6,536.69 in lost interest resulting from the delay caused by the appeal;[2] and (3) estimated additional claims administrator costs of $56,500 that will be incurred as a result of the appeal. *See* Declaration of Joshua B. Swigart in Support of Motion for Appeal Bond ("Swigart

---

[1] Plaintiffs reserve the right to seek costs on appeal in excess of this requested bond amount.

[2] The estimate of $6,536.69 is based on an 18-month appeal period and the interest rate prescribed for judgments.

Bond Dec.") at ¶ 3 and Declaration of Tricia Solozano in Support of Motion for Appeal Bond ("Solorzano Bond Dec.") at ¶ 2.

Appeal bonds are commonplace in class actions where professional objectors file spurious objections and appeals. This Court should require an appeal bond as a surety against Objectors' Smith, Nelson and Morgan's self-serving attempts to hold up the effective date of the Settlement for years for the other approximate 64,000 class members who made claims.

## I. FACTUAL BACKGROUND

As this Court is aware, this consumer protection class action was filed in February 2008 pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). After multiple hearings and extensive review of the terms of a proposed Settlement, this Court held a hearing on September 18, 2012 where all parties and other interested persons (including objectors Smith, Nelson and Morgan) were afforded an opportunity to be heard in support of and in opposition to the Settlement of this action, although Smith, Nelson and Morgan did not appear at the hearing nor did any of them file a notice stating they would so appear, as per the Settlement's terms. On September 28, 2012, this Court granted final approval of the Class Action Settlement, and it also granted in full Class Counsel's motion for attorneys' fees, costs and incentive payments. [Dkt. No. 137.] In its order, the Court noted that it considered all objections, including objections filed by Smith, Nelson and Morgan, overruled those objections and concluded that the settlement and attorneys' fees requests were fair and reasonable by granting the Final Approval Motion. [Dkt. No. 137.]

## II. ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 39, an appellant in a civil case must pay "costs on appeal" to appellees in the event the appeal is dismissed or if the judgment is affirmed. If there is a finding by the appellate court that the appeal is frivolous, the appellate court can order the appellant to pay damages, plus single or double costs. Fed. R. Civ. P. 38; see also 28 U.S.C. § 1912. Federal Rule of Appellate Procedure 7 allows the district court to "ensure payment" of these costs by "requir[ing] an appellant to file a bond or provide other security in any form and amount necessary." Fed. R. App. Pr. 7. "[T]he purpose of the rule is to 'protect [] . . . an appellee

against the risk of nonpayment by an unsuccessful appellant.'" *Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, *17-*18 (N.D. Cal. Oct. 21, 2008) (quoting *In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2007 U.S. Dist. LEXIS 69510, *4 (S.D.N.Y. Sept. 20, 2007)); *see also Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834 *2 (D. Mass. Aug. 22, 2006) ("[B]y requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of to the class. Posting a bond sufficient to ensure that the class can recoup the costs of appeal provides the class with an appropriate incentive to litigate the appeals, establish their lack of merit. And if the appeal turns out not to be frivolous despite initially appearing so, the objectors will get almot the entirety of their bond back.") Such a bond will protect the interests of the class, as it will be hard, if not impossible to obtain costs after successfully prevailing against pro se objectors, especially those two objectors residing outside of his jurisdiction.

The question of the need for a bond, as well as its amount, are within the District Court's discretion. *Fleury*, 2008 U.S. Dist. LEXIS 88166 at *18.

### A. An Appeal Bond Is Necessary In This Matter

Factors courts in this Circuit have considered in evaluating whether an appeal bond is necessary are (1) the merits of the appeal; (2) the risk that the appellant would not pay the appellee's costs if the appeal loses; and (3) the appellant's financial ability to post a bond. *Miletak v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 125426 (N.D. Cal. Aug. 27, 2012) (ordering objector to post appeal bond of $60,000 where objections were without merit, the risk of nonpayment factor was neutral, and where there was no evidence of inability to pay).

#### 1. The Appeals Are Without Merit

Courts consider the merits of the appeal when evaluating whether to require an appeal bond, because this factor "informs the likelihood that the appellant will lose and thus be liable for costs." *Fleury*, 2008 U.S. Dist. LEXIS 88166 at *20; *see also De Witt v. Western P. R. Co.*, 719 F. 2d 1448, 1451 (9th Cir. 1983) ("An appeal is frivolous if the result is obvious, or the arguments of error are wholly without merit."). Here, the record demonstrates that Smith, Nelson and Morgan's objections are without merit and are unlikely to be successful on appeal, as explained in

detail by the Court at the time of the final approval.

First, even if Smith, Nelson and Morgan's objections had merit, it is unlikely that they would be sustained on appeal, as this Court's approval of the Settlement and the motion for fees will be overturned only if there has been an abuse of discretion. *Hanlon v. Chrysler Corp*., 150 F. 3d 1011, 1027, 1029 (9th Cir. 1998). Given this "extremely limited" review, (*Id*. at 1026), and considering this Court's careful work in reviewing the Settlement, it is very unlikely that this Court's conclusion that the Amended Settlement is "fair, reasonable, and adequate," and that the attorneys' fees and Service Awards are appropriate, will be found to be an abuse of discretion. [Dkt. No. 137.]

Even under a less deferential standard, however, the objections would not succeed on the merits. As Plaintiffs asserted in settlement-related briefing before this Court, see Dkt. No. 126, Smith, Nelson and Morgan offered no valid basis to reject the reasonableness of the Settlement or the motion for fees. Smith, Nelson and Morgan's objections that the claim amount is too low or that the attorney fees are too high were overruled by the Court at the final approval hearing, as explained in detail by the Court at the hearing. [Dkt No. 137.]

Objector Morgan's objections are clearly without merit as he objects to lack of disclosure of certain items, including the number of class members, the notice procedures, amount of returned mail, and failing to disclose the amount of costs of claims administration and notice. [Dkt. No. 128-7.] However, the declarations filed in support of final approval and for attorneys' fees and costs do in fact disclose all of the items Morgan claims are missing. Furthermore, Morgan objects to the attorneys' fees and incentive awards sought but both amounts (30% of the Fund and Incentive Awards of $10,000 in total) are well within the guidelines of Ninth Circuit authority. That objection directly conflicts with well-settled Ninth Circuit law establishing a benchmark of 25% of a common fund, but permitting the District Court in its discretion to make an adjustment increasing the percentage awarded, and multipliers typically in the range of 1-4, if not higher. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050-51 and n.6 (9th Cir. 2002); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where multiplier was 6.85); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal.

2008) (awarding 25% fee, plus costs, where multiplier was 5.2).

Objector Nelson in Dkt. No. 120 claimed the Fund and the amount paid per claim were insufficient but the Court found otherwise. Also, Nelson objected on the basis that AllianceOne would likely get a $3,000,000 "refund" under the reversion. However, that statement was incorrect as AllianceOne received only about $700,000 from the original $9,000,000 Fund, as can be seen after deducting the amounts detailed in the Court papers that were paid for claims, fees, incentive awards and notice and claims administration. Nelson also objected that it wasn't explained why Hansen & Levey Forensics, Inc. earned $250,000. However, that is also not true because detailed invoices and declarations about the extensive Information Technology services they provided were filed with the Court. The same is true about Nelson's objection about the Claims Administrator's charges. Detailed declarations were filed about the services rendered by Gilardi & Co., LLC.

Likewise, the objections by Objector Smith (Dkt. No. 124) are without merit, as found by the Court. She claimed that the numbers in the Notice didn't add up, but she used incorrect numbers in her objection, not the numbers set forth in the Notice and in the papers filed with the Court. She also wanted a higher amount to be paid per claim, but the Court found the amount negotiated in the Settlement Agreement to be fair and reasonable. She also objected that the requested attorneys' fees were too high, but as explained above, this Court awarded fees within the Ninth Circuit guidelines. Lastly, she objected to the *cy pres* process, but due to the amount of claims actually filed, that minimum *cy pres* agreed upon as a "floor" was not needed.

In summary, the generalized objections in each objection that related to the amount of the Fund and the recovery to each claimant are without merit. The Settlement provides excellent monetary relief to the Class, especially given the risks of the litigation. Nelson and Smith's objections concerning the payment of a potential *cy pres* award is equally without merit, as there were a sufficient number of claims where a *cy pres* award was unnecessary. As this Court concluded, at the final approval hearing, the class relief is fair and reasonable, particularly where over 97% of the Class received direct notice, [Dkt. No. 116-7 ¶ 15]. As this Court concluded in granting final approval, the relief is fair and reasonable. If the Objectors truly believed that the

relief afforded by the Settlement is inadequate, they were free to opt out and pursue claims individually. There Is a Significant Risk That the Objectors Will Not Pay Appellate Costs and These Pro Se Appellant Objectors Put The Class At Risk

Smith, Nelson and Morgan are not represented by counsel. Further, two of the three objectors (Smith and Morgan) are located out of state, in Texas. [Dkt. Nos. 123, 124,] This factor weighs in favor of requiring a bond if the objector does not reside in the location where the litigation takes place. *Fleury*, 2008 U.S. Dist. LEXIS 88166 at *22 (the fact that objector lived outside California and Ninth Circuit "arguably would make it more difficult for the Settling Parties to collect their costs should they prevail on the appeal"); *see also In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293 (observing that the geographical dispersion of objectors creates a risk of refusal to pay, and a corresponding burden on class counsel). Their distant locations will make collection of any costs economically and procedurally difficult and weighs in favor of an appeal bond. Upon defeating the appeal by these pro se objectors, which is likely, Plaintiffs' counsel for the class will have difficulty in recovering the significant costs for the class. Based on two separate appeals filed by three objectors, the class of over 64,000 class members making claims and awaiting their settlement payment will be delayed, likely for years. Not only do the class members face delayed payment of a fair and reasonable settlement, they risk a reduction in their claim amount or dilution of the settlement fund by being forced to incur increased litigation costs (obtaining the record on appeal), increased class administration costs, and the lost interest on the recovery.

### 2. THERE IS NO EVIDENCE THE OBJECTORS ARE UNABLE TO PAY A BOND

There is no evidence that Smith, Nelson and Morgan cannot afford a substantial bond. In the absence of evidence submitted with an opposition brief, this factor therefore weighs in favor of imposing a bond. *Miletak*, 2012 U.S. Dist. LEXIS 125426 at *5 (absence of objector financial records demonstrating inability to pay bond "weighs in favor of imposing an appeal bond"); *Fleury*, 2008 U.S. Dist. LEXIS 88166 at *21 (imposing appeal bond where objector "submitted

no financial information to indicate that she is financially unable to post a bond"); *see also*

*In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293 (ability to pay bond is "presumed" where objectors do not present evidence that they lack financial ability to post bond); *In re MagSafe Apple Power Adapter Litig.*, 2012 U.S. Dist. LEXIS 88549 (N.D. Cal. May 29, 2012) (imposing appeal bond of $15,000, subject to upward adjustment, and requiring objectors to make themselves available for a deposition on ability to pay).

**B. AN APPEAL BOND IS NECESSARY IN THIS MATTER**

Under Rule 39(e), costs on appeal taxable in the district court may include preparation and transmission of the record and transcript costs, among other administrative costs related to an appeal. The Ninth Circuit has concluded, however, that "[t]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007) (attorneys' fees appropriate costs on appeal where provided by fee shifting statute); *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384, *41 (S.D. Fla. Feb. 14, 2012) (mandating bond, noting that "[t]he costs that can be included in a Rule 7 bond are not . . . limited to costs defined by Rule 39"). For example, courts have required bond amounts that also consider the interest costs related to the delay occasioned by the appeal and additional claims administrator costs during the pendency of the appeal.

Plaintiffs respectfully request that the appeal bond be set at $64,536.69. This is a conservative estimate of the amount required to secure costs that will likely be taxable on appeal. See Solozano Bond Dec. at ¶ 2, Swigart Bond Dec. at ¶¶ 2 and 3. The amount was calculated based on the interest lost over 18 months due to the delay caused by appeal, additional claims administrator costs estimated at $56,500, and the probable Rule 39(e) costs of approximately $15,000. *Id.*

**1. COSTS OF DELAY**

When determining the appropriate amount of an appeal bond, federal courts routinely include an estimate of class members' lost interest that results from delayed distribution of settlement relief. *See, e.g., Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169, *6 (N.D. Cal. 2006) (including in bond amount "$239,667 in anticipated post-judgment interest to compensate for the delayed distribution of the $4.1 million cash portion of the settlement"); *In re Wal-Mart*,

2010 U.S. Dist. LEXIS 21466, *18 (requiring appeal bond of $500,000, including consideration of "administrative costs and interest costs to the potentially more than 3 million class members, [and] other costs reasonably incurred under Rule 39 of the Federal Rules of Appellate Procedure"); *FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072 at *8 (including estimated interest on settlement amount as part of bond amount).

Plaintiffs estimated the requested interest amount, $6,536.69, using the statutory interest rate for judgments, which is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a). Here, the Orders being appealed are dated September 28, 2012. The 1-year constant maturity Treasury yield for the week ending September 14, 2012 was 0.17 percent. See http://www.federalreserve.gov/releases/h15/20121001/. Plaintiffs projected an 18-month delay, which is consistent with the Ninth Circuit's disposition rate.[3] Applying the 0.17 percent interest rate for 18 months to the $2,562,320 in cash that is estimated to be available for distribution to the Class results in $ $6,536.69 in interest. Swigart Bond Dec. at ¶ 2.[4]

The *Fleury* court concluded that under *Azizian v. Federated Dep'tStores, Inc.*, 499 F.3d 950 (9th Cir. 2007) delay costs are not properly imposed pursuant to Rule 7. *Fleury*, 2008 U.S. Dist. LEXIS 88166, at *29 (N.D. Cal. Oct. 21, 2008). But the *Azizian* court instructed that district courts should not impose damages to deter frivolous appeals; it did not address whether costs of delay associated with an appeal are an appropriate consideration when determining an appeal bond. *Azizian*, 499 F.3d at 961. Plaintiffs do not base their inclusion of delay costs in the requested bond amount on the frivolousness of the appeal; they base it on the practical reality that they will be deprived of access to the funds Class Members are entitled to – and of the ability to

---

[3] According to court statistics for the 12-month period ending in September 2011, the median time from filing of a notice of appeal to disposition in the Ninth Circuit was 17.4 months. See http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/CourtsOfAppealsSep2011.aspx. Plaintiffs reserve the right to seek costs on appeal based on the actual prevailing interest rate and duration of appeal

[4] Though the total Fund is $9 million, the claims administrator has estimated that approximately $2,565,320 in cash will be available for distribution to the Class. [Dkt. 116, P. 7]. Plaintiffs thus calculated the interest based on this lower number.

grow those funds as they see fit – for at least a year pending the resolution of appeal. The Settlement Agreement and corresponding judgment do not require the payment of the $9,000,000 Settlement Fund (other than certain notice and claims administration costs) until the judgment is "final". Thus, until the appeal is resolved, and the judgment is "final", the Class Members will be deprived of the use of the money, and the interest earned may in most cases be less than an individual could expect to earn through other investments.

**2. ADDITIONAL CLAIMS ADMINISTRATOR EXPENSES**

Courts have also considered evidence of additional claims administration expenses associated with the delays caused by appeal. *See Miletak*, 2012 U.S. Dist. LEXIS 125426 at *6-*7 (finding good cause supports inclusion of $50,000 in "administrative costs," incurred in order "to continue to service and respond to class members' needs pending the appeal"); *In re: Uponor, Inc.*, F1807; *Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247 (D. Minn. Sept. 11, 2012) (Dkt. No. 132 at 9) (attached as Exhibit B to Swigart Bond Decl.) (including $20,000 in additional claims administrator costs as part of appeal bond, because such costs are "reasonable and necessary" and "should be shouldered by the Objectors, particularly given the tenuous nature of their arguments"); *In re Pharm. Indus. Average Wholesale Price Litig*., 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (including in Rule 7 bond $61,000 in "administrative costs attributable to delay in [settlement] distribution").

Here, the claims administrator estimates that the Fund will be depleted by an additional $40,500-$56,500 due primarily to the need to continue to respond to Class Member inquiries during an estimated 18-month appeal period. Solozano Bond Dec. at ¶ 2. Smith, Nelson and Gordon should be required to post a bond that includes the higher of the two estimated costs of $56,500.

**3. RULE 39(E) COSTS**

Even where courts have considered only those costs specified in Rule 39(e), such as photocopying and preparing and serving the record on appeal, they have required significant bonds. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 295 (concluding $25,000 to be appropriate amount to cover Rule 39(e) costs); *Miletak*, 2012 U.S. Dist. LEXIS 125426 at *6-

*7 (bond amount included $10,000 in Rule 39(e) appellate costs); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541, *29 (N.D. Cal. Aug. 2, 2011) (imposing $20,000 appeal bond on class action objector); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 92293, *5-*6 (N.D. Cal. Aug. 18, 2011) (imposing $15,000 appeal bond on objector, a fixed-income retiree who had sought to appear in forma pauperis); *In re Currency Conversion Fee Antitrust Litig.*, 2010 U.S. Dist. LEXIS 50436, *5 (S.D.N.Y. May 21, 2010) (noting $50,000 appeal bond was warranted for Rule 39(e) costs).

Consistent with this authority, and based on the previous experience of Class Counsel, Plaintiffs estimate that Rule 39(e) appeal costs in this case will be at least $15,000. Swigart Bond Dec. at ¶ 3. Consequently, Plaintiffs ask that Smith, Nelson and Gordon be required to post an additional $15,000 as part of the bond to guarantee Plaintiffs' basic costs of photocopying, serving, preparing, and transmitting the record on appeal.

## II. CONCLUSION

For the reasons set forth herein, Class Plaintiffs respectfully request that this Court require Objectors Smith, Nelson and Gordon to post an appeal bond of $64,536.69.

Respectfully submitted,

**HYDE & SWIGART**

Date: November 8, 2012

By: /s Joshua B. Swigart
Joshua B. Swigart
Attorneys for Plaintiffs

**LAW OFFICES OF DOUGLAS J. CAMPION**

Date: November 8, 2012

By: Douglas J. Campion
Douglas J. Campion
Attorneys for Plaintiffs