# EXHIBIT A



Neutral
As of: November 6, 2012 7:10 PM EST

# In re Uponor, Inc.

United States District Court for the District of Minnesota

June 29, 2012, Decided; June 29, 2012, Filed

Court File No. *11-MD-2247* ADM/JJK

**Reporter:** 2012 U.S. Dist. LEXIS 90294; 2012 WL 2512750

In re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation; This Order Relates to all Actions

**Notice:**

**Subsequent History:** Stay denied by In re Uponor, Inc., 2012 U.S. Dist. LEXIS 117243 (D. Minn., Aug. 17, 2012)

**Prior History:** *In re Uponor, Inc., 2012 U.S. Dist. LEXIS 85472 (D. Minn., June 19, 2012)*

### Core Terms

class member, settlement, class action, class representative, notice, final approval, attorney's fees, leak, negotiations, settlement agreement, replacement, mailed, objectors, preliminary approval, class certification, experienced, plumbing system, proposed class, set forth, prerequisite, predominate, website, weighed

**Counsel:** [*1] Shawn M. Raiter, Esq., Larson King, LLP, St. Paul, MN; Robert K. Shelquist, Esq., Lockridge, Grindal, Nauen, PLLP, Minneapolis, MN; Charles J. LaDuca, Esq., Cuneo, Gilbert & LaDuca, LLP, Washington, D.C.; Michael McShane, Esq., Audet & Partners, LLP, San Francisco, CA; David Black, Esq., Perkins Coie, LLP, Denver, CO; J. Gordon Rudd, Jr., Esq., Zimmerman Reed, PLLP, Minneapolis, MN; Christopher L. Coffin, Esq., Pendley, Baudin & Coffin, L.L.P., New Orleans, LA; and David M. Birka White, Esq., Birka-White Law Offices, Danville, CA, on behalf of Plaintiffs.

Bradley D. Fisher, Esq., Fisher Bren & Sheridan LLP, Minneapolis, MN; and Howard L. Lieber, Esq., John R. Schleiter, Esq., and Lindsay E. Dansdill, Esq., Grotefeld, Hoffman, Schleiter, Gordon & Ochoa, LLP, Chicago, IL; and Joshua P. Haid, Esq., Fisher Kannaris, PC, Chicago, IL, on behalf of Defendants.

**Judges:** ANN D. MONTGOMERY, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ANN D. MONTGOMERY

Sara Khosroabadi

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 3 of 14

Page 2 of 13
2012 U.S. Dist. LEXIS 90294, *1

| Opinion |
|---|

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

On June 26, 2012, the undersigned United States District Judge heard oral argument on the Motion for Final Approval of Class Action Settlement [Docket No. 83] ("Motion for Final Approval") and the Motion for an Award of Service [*2] Payments to Class Representatives and for an Award of Attorneys' Fees, Costs, and Expenses to Settlement Class Counsel [Docket No. 87] ("Motion for Payments"). The Court also heard oral argument objecting to the final approval and award of service payments by counsel representing twenty-four class members. For the reasons set forth below, the Motion for Final Approval and the Motion for Payments are granted.

**II. BACKGROUND**

This multidistrict litigation ("MDL") case concerns brass fittings sold by Radiant Technology, Inc. ("RTI") and Uponor, Inc. ("Uponor") (collectively, the "RTI Defendants") throughout the country until the end of 2006. See generally Aff. of Shawn Raiter in Supp. of Mot. for Final Approval [Docket No. 86] ("Raiter Final Approval Aff.") ¶¶ 3-4. Plaintiffs contend the fittings are uniformly defective. Id. The damage caused by defective RTI F1807 systems can be significant, approaching $100,000 for a single leak. Id. at ¶5. Repair costs to the systems vary according to the size and construction of a home, but generally run between $4,000 and $7,000 per home. Id. at ¶ 6; see also McGregor First Am. Compl. [McGregor Docket No. 18] ¶¶ 55, 56.[1] Although the RTI Defendants [*3] do not know precisely how many structures contain an RTI F1807 or where those systems are located, the lowest estimate is that 30,000 homes contain these systems. Raiter Final Approval Aff. ¶ 3.

The first putative class action suit against the "RTI Defendants," McGregor v. Uponor, Inc., was filed on May 15, 2009. See McGregor Compl. [McGregor Docket No. 1]. That case asserted a number of claims regarding defective brass fittings used in Plumb-PEX plumbing systems that the RTI Defendants sold under standard ASTM F1807 ("RTI F1807"). The McGregor Plaintiffs successfully defended a motion to dismiss and motion to disqualify.

Raiter Final Approval Aff. ¶ 7. Additional cases were filed as putative class actions against the RTI Defendants in Minnesota, Oregon, and California, and [*4] these cases also survived several motions brought by the RTI Defendants. Id. at ¶¶ 9-13. The RTI Defendants then petitioned the Judicial Panel for Multidistrict Litigation ("JPML") to establish an MDL proceeding, and the petition was granted to transfer all pending actions to the District of Minnesota for pretrial coordination. Id. at ¶¶ 10-11.

Magistrate Judge Jeffrey J. Keyes oversaw the parties' arms' length negotiations, which began in May 2011 and involved Plaintiffs' counsel, counsel for the RTI Defendants, counsel for third-party defendants, insurance coverage counsel for the RTI Defendants and their insurers, and insur-

---

[1] As an MDL, this case has multiple dockets. Unless otherwise specified, all docket entries refer to the lead case, In re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation, 11-md-2247 (ADM/JJK). The McGregor Docket refers to pleadings filed in McGregor v. Uponor, Inc., 09-cv-1136 (ADM/JJK). For ease of reference, the docket numbers in the McGregor case will be referred to as [McGregor Docket No.].

2012 U.S. Dist. LEXIS 90294, *4

ance company representatives. Raiter Final Approval Aff. ¶¶ 16-17. The parties unsuccessfully negotiated again at full-day settlement conferences with Judge Keyes in June 2011 and September 2011, with negotiations continuing throughout that time. Id. at ¶¶ 16-18. The parties ultimately reached a settlement on most material terms in November 2011. Id. at ¶ 18. During these negotiations, the RTI Defendants continued asserting coverage defenses. Id. at ¶ 19. Settlement was induced in part by RTI's cessation of operations in early 2005. Id. at ¶ 20.

The ultimate Settlement [*5] made available substantial benefits for class members, as well as attorneys' fees, costs, and expenses up to $2,400,000 to be paid separately from the fund available to class members. Raiter Final Approval Aff. Ex. A. ("Settlement Agreement") ¶ 85. The RTI Defendants also agreed to fully fund the nearly $1 million cost of providing notice to the class, as well as funding the claims administration and class representative service awards. Settlement Agreement ¶¶ 54, 87, 90, 98. The preliminary approval of the Settlement in January 2012 scheduled a final fairness hearing for June 26, 2012. Am. Class Certification Order [Docket No. 14] ¶ 67.

On January 18, 2012, this Court issued an Order Granting the Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement and Form and Dissemination of Notice to the Class [Docket No. 12] ("Class Certification Order"). Two settlement groups were preliminarily approved, one group for individuals whose Uponor RTI F1807 Systems had already leaked [2] and one for those whose systems had not. [3] Those class members whose RTI F1807 systems have already leaked or which leak in the future, the "Soggy Plaintiffs," are [*6] entitled to the reasonable damage and repairs caused by the leaks. Settlement Agreement ¶¶ 32, 99 -113. After two leaks in the system, Soggy Plaintiffs are entitled to a replacement of their RTI F1807 system at the RTI Defendants' expense. Id. at ¶¶ 99-113. Class members who have not experienced at least one leak but are able to demonstrate "by way of a flow test that a differential in water flow . . . of more than 50% [exists] between the hot and cold lines . . . .," referred to as the "Cloggy Plaintiffs," are entitled to the cost of repair and replacement of the brass fittings and, where this is insufficient to restore normal water flow, replacement of the entire system. Id. at ¶¶ 95, 109, 113. Owners of multi-unit dwellings may seek replacement of their RTI F1807 system if eligible leaks have occurred in 30% of the building's units or if eligible water flow differential exists in 30% of the units after remediation efforts. Id. at ¶¶ 114-117.

The Settlement also provides that all warranties remain in place. Id. at ¶ 119. The RTI Defen-

---

[2] All persons or entities that own or have owned, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained ASTM F1807 style plumbing systems manufactured and / or sold by Radiant Technology, [*7] Inc. or Uponor, Inc. and their predecessors installed on or after May 15, 1999 that have experienced at least one leak in an RTI component in the system before July 1, 2012. Also included in this class are all persons or entities who have legal standing to pursue claims through or in the name or right of those eligible entities who own or have owned, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained ASTM F1807 style plumbing systems manufactured and / or sold by the Radiant Technology, Inc. or Uponor, Inc. and their predecessors and which leaked and caused damage before July 1, 2012.

This past leak settlement class includes all individuals and entities and any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all persons who have legal standing and are entitled to assert a claim on behalf thereof. Am. Class Certification Order ¶ 6.

[3] All persons or entities that own buildings, homes, residences, or any other [*8] structures located in the United States that contain ASTM F1807 style plumbing systems manufactured and / or sold by Radiant Technology, Inc. or Uponor, Inc. and their predecessors installed on or after May 15, 1999 that have not leaked and caused property damage before July 1, 2012.

This settlement class of the owners of non-leaking ASTM F1807 style plumbing systems includes all individuals and entities and any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, attorneys, agents, and assigns and all persons who are entitled to assert a claim on behalf thereof. Insurance companies are not included in this settlement class. Am. Class Certification Order ¶ 6.

dants will fund the entire claim administration, class notice process, and attorneys' fees, costs, and service award, and there is no cap placed on the money to be paid out in the claims process. Id. at ¶ 49. Past and present claimants receive the same benefits, Id. at ¶¶ 99-113, and class members have at least [*9] eighteen months to make a claim, even if their RTI F1807 system warranty previously expired. Id. at ¶ 118. The leak and reduction in flow remedies are not mutually exclusive — a Cloggy Plaintiff may recover under the flow differential remedy, and if that plaintiff later becomes a Soggy Plaintiff, under the leak remedy as well. The RTI Defendants will compensate class representatives John and Helen McGregor up to $7,500 collectively, and up to $5,000 per abode to the remaining class representatives. Id. at ¶ 87. The Settlement is an opt-out settlement. Id. at ¶¶ 65-72.

After the preliminary approval of the Settlement, the parties carried out the notice program, hiring an experienced consulting firm to design and implement the plan. Decl. of Gina Intrepido-Bowden [Docket No. 78] ("Intrepido-Bowden Decl.") ¶ 2. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. [*10] Id. at ¶¶ 7-13. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each. Id. at ¶¶ 24-25. On January 20, 2012, notice of the Settlement was mailed to state Attorneys General, the U.S. Attorney General, and the U.S. CAFA Coordinator, in accordance with the Class Action Fairness Act of 2005 ("CAFA"). Id. at ¶ 6; Intrepido-Bowden Decl. Ex. 1. None of the Attorney Generals responded to the Notice. Raiter Aff. in Opp'n to Obj. [Docket No. 82] ¶ 15.

Class member reaction has been positive and objections minimal. Out of at least 30,000 potential class members, only three sets of objections were received. One of those objections was filed by individuals who are not class members.[4] Two class members from a single Florida neighborhood filed objections (the "Florida Objectors"), as well as twenty-four class members represented by the same California law firm (the "California Objectors"). See [Docket Nos. 54, 74, 75]. Only two requests for exclusion were received on behalf of a Nevada law firm actively litigating claims in Nevada against the RTI Defendants. [Docket Nos. 71, 72]. Moreover, although claims processing has [*11] not yet started, the claims administrator has already received at least eighty forms, and as of June 15, 2012, the claim form had been downloaded more than 1,000 times from the Settlement website, www.RTISettlement.com. Intrepido-Bowden Aff. ¶¶ 14, 17. None of the class representatives have filed claims thus far, and subrogated insurance companies are just beginning to file claims. Raiter Final Approval Aff. ¶ 22.

## III. DISCUSSION

The threshold issue is whether the settlement class satisfies the requirements of _Federal Rule of Civil Procedure 23(a)_ and at least one prong of _Rule 23(b)_. Upon determining that the class satisfies _Rule 23_, [*12] the Court will then analyze the Settlement itself, as well as any relevant objections. Finally, the Court will address the award of payments to class representatives and attorneys' fees.

### A. Settlement Class Certification

---

[4] Although they filed an objection on June 6, 2012, the two objectors from Texas are clearly not class members here. The photo they attached as Exhibit A to their Objection bears the letters "HLPEX," a pipe fitting not at issue in this litigation. See Objection of Paul Palmer and Jeffrey Palmer [Docket No. 73] Ex. A. Therefore, their objections will not be further discussed.

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 6 of 14

Page 5 of 13
2012 U.S. Dist. LEXIS 90294, *12

*Rule 23(a)* requires as a prerequisite for class certification that the following be shown: (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact are common to the class; (3) the representative parties' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class interests. *Fed. R. Civ. P. 23(a)(1-4)*. Once the *Rule 23(a)* prerequisites are met, the class action may be maintained if the court determines that a *Rule 23(b)* factor is met, including that questions of law common to the class predominate over individual member questions and that a class action is the superior method for adjudicating the controversy. *Fed. R. Civ. P. 23(b)(3)*.

### 1. *Rule 23(a)* Prerequisites

The proposed class here meets all the prerequisite requirements of *Rule 23(a)*. Courts in Minnesota have found that putative class sizes of forty will support a finding of numerosity, and much [*13] smaller classes have been certified by courts in the Eighth Circuit. See, e.g., *Lockwood Motors, Inc. v. Gen. Motors, Inc.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (approving of classes of as few as forty members); *Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (approving class of twenty members); *Horn v. Assoc. Wholesale Grocers, Inc.*, 555 F.2d 270, 275-76 (10th Cir. 1977) (approving class of 41-46 members). The proposed class here, numbering at least 30,000 potential claimants, easily satisfies this minimal threshold of numerosity. Given the numerosity of class members, joinder is impracticable. Moreover, no party or class member has challenged numerosity. Accordingly, this Court finds the class sufficiently numerous to satisfy *Rule 23(a)(1)*.

Further, questions of law and fact are common to all members of this numerous class, and the claims and defenses are typical of the class. The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citations and internal quotations [*14] omitted). "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *Donaldson v. Pillsbury Co.*, 554. F.2d 825, 831 (8th Cir. 1977). Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *Id.* at 830; see also *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977). Because commonality and typicality are similar, the Eighth Circuit requires under typicality that the class representative demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (quoting *Donaldson*, 554 F.2d at 830).

Here, common issues of law and fact exist, and the defenses and claims are typical throughout the class. The claims contain common issues of law and fact, namely whether the RTI F1807 systems are defective and meet warranties. Additionally, each class member owns property containing an RTI F1807 system, each claims the system is defective, and each seeks damages from the RTI Defendants. All class members have [*15] the same interests and remedial theories, and therefore the class meets the commonality and typicality factors.

The final *Rule 23(a)* prerequisite is satisfied because the class counsel and representatives are adequate. Adequacy of representation is satisfied where: "(1) the class representatives have common interests with the members of the class, and (2) . . . the class representatives will vigorously prosecute the interest of the class." The interests of the class are fairly and adequately protected by class counsel and class representatives. Class counsel are experienced complex litigation firms with significant resources and class action experience. Indeed, many of the firms have significant experience litigating claims involving pex plumbing systems similar to RTI F1807.

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 7 of 14

Page 6 of 13
2012 U.S. Dist. LEXIS 90294, *15

See, e.g., In re Zurn Pex Plumbing Prods. Liab. Litig., 267 F.R.D. 549 (D. Minn. May 6, 2010) (listing Shawn Raiter, Esq., as lead counsel on class action litigation involving a pex plumbing system). Further, the class representatives' interests are identical to those of absent class members, they seek the same form of relief, and they have demonstrated their commitment through their diligent litigation of this [*16] matter. Ultimately, the fact that a few class members object does not mean representation is inadequate; "the adequacy of class representation . . . is ultimately determined by the settlement itself." DeBoer, 64 F.3d at 1175 (citation omitted).

Moreover, this Court finds no inherent conflicts between the interests of the class representatives and the absent class members. "In order to satisfy the adequacy requirements, the Plaintiffs must show 'that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.'" In re Hartford Sales Practices Litig., 192 F.R.D. 592, 604 (D. Minn. 1999) (quoting In re Potash Antitrust Litig., 159 F.R.D 682, 692 (D. Minn. 1995)). No objectors question the competence of counsel or their ability and demonstrated willingness to vigorously prosecute this action. Objectors contend that class counsel has failed to assert any remedies for California resident class members under California Civil Code § 896(a)(15), known as California's Right of Repair Act [*17] ("RORA"). As set forth more fully in this Court's June 19, 2012 Order [Docket No. 80], the proposed Settlement provides the same remedy available under RORA and provides a remedy to both Soggy and Cloggy Plaintiffs, similar to RORA. Objectors' contention that class representatives must raise every state law claim available to be considered adequate is untenable, as its ultimate adoption would cause "nationwide class-action litigation [to] effectively cease because parties from varying states with varying laws would be unable to bring all possible state actions." June 19, 2012 Order at 9.

Objectors also question whether the named class representatives can adequately raise claims to which they were not personally exposed — to wit, all of the class representatives fit into the Soggy Plaintiffs group and not the Cloggy Plaintiffs group. However, Objectors have failed to enunciate how the makeup of the class representatives has made them inadequate or the Settlement at odds with absent class members' interests. "Unfortunately for this argument, the assertion is purely conclusory and, on this Record, we have no responsible basis to infer that any Class-wide claim is at odds with a claim held [*18] by the named Plaintiffs." Snell v. Allianz Life Ins. Co. of N. Am., Civ. No. 97-2784, 2000 U.S. Dist. LEXIS 13611, 2000 WL 1336640, at *12 (D. Minn. Sept. 8, 2000). Accordingly, class representatives and counsel are found to be adequate.

**2.** *Rule 23(b)(3)*

In addition to satisfying the Rule 23(a) prerequisites, the proposed class here also satisfies Rule 23(b)(3) because common questions of law predominate and class action is the superior method of adjudication. When a class is being certified for settlement, the Court need only analyze the predominance of common questions of law and the superiority of class action for fairly and effectively resolving the controversy; it need not examine Rule 23(b)(3)(A-D) manageability issues, because it will not be managing a class action trial. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); see also In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., 99-MDL-1309, 2004 U.S. Dist. LEXIS 25412, 2004 WL 2931352, at *8 (D. Minn. Dec. 16, 2004). However, this means that "other specifications of the Rule —those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention in the settlement context." Amchem, 521 U.S. at 620.

**a. [*19] Predominance of Common Issues of Law and Fact**

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 8 of 14

Page 7 of 13
2012 U.S. Dist. LEXIS 90294, *19

In determining whether common issues of law and fact predominate, the Court analyzes whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The Court is to "conduct a limited preliminary inquiry, looking behind the pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class." *In re Zurn Pex*, 267 F.R.D. at 560 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

The class representatives here, as well as the absent class members, seek to remedy a shared legal grievance concerning defective RTI F1807 systems. Moreover, the common remedial theories — repair, replace, restore — were all addressed in the negotiations and in the Settlement. Common questions of law predominate here.

**b. Superiority of Class Action**

Additionally, class action settlement is the superior method of resolving this dispute fairly and effectively. Settlement of the class action avoids duplicative litigation, saving both plaintiffs and defendants significant time and [*20] legal costs to adjudicate common legal and factual issues. The Settlement provides substantial remedies to thousands of class members, completely reimbursing them for damages and repairs caused by leaks and flow reduction in their RTI F1807 systems. Class members have not expressed interest in individually prosecuting separate actions, and this Court is "not aware of any litigation, elsewhere, that would tend to undermine the certification requested by the Class . . . ." *Snell*, 2000 U.S. Dist. LEXIS 13611, 2000 WL 1336640, at *14. For these reasons, a class action here is the fairest and most effective way of resolving thousands of potential individual controversies arising from members of this class.

Objectors argue that the Class proposed for settlement is untenable under Supreme Court precedent set forth in *Amchem*. In *Amchem*, the Court determined that a conflict existed between class members already exhibiting asbestos-related injuries and class members who might conceivably experience asbestos-related injuries in the future. See *Amchem*, 521 U.S. at 626. The disparity of class interests — "generous immediate payments" for the previously injured and an "ample, inflation-protected fund for the future" for the [*21] exposure-only plaintiffs — weighed against certifying these two groups as a single class. *Id.* Additionally, *Amchem* involved a scenario where prior to initiating litigation, the parties agreed upon the proposed class and settlement — "[t]he class action thus instituted was not intended to be litigated." *Id.* at 601. The present class, however, bears much more resemblance to the class upheld in *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999). Decided two years after *Amchem*, *Petrovic* concerned a class action settlement composed of three subgroups, two of which were guaranteed compensation for pollution's past effects to their property and one which had access to a recovery fund for any future pollution damages. *Petrovic*, 200 F.3d at 1144-45. Although the objectors argued that the guaranteed compensation class members with past damages were at odds with the recovery fund class members with potential future damages, the Eighth Circuit held that the class did not need to be subdivided into separate classes and that the disparity in compensation between the three subgroups did not create an internal conflict. *Id.* at 1146.

The class and settlement here were reached after arms-length [*22] negotiation and after years of discussion, discovery, motion practice, and trial preparation. Accord *Petrovic*, 200 F.3d at 1146. Moreover, no allegations of collusion between class counsel and defendant have been raised here. Additionally, as the *Petrovic* Court found, the mere fact that "some class members receive more than other class members in a settlement" does not of itself require subdivision of a class — "every settlement will involve different awards for various class members." *Id.* Here, the fact that the Soggy Plaintiffs and Cloggy Plaintiffs are not mutually exclusive groups, as well as the

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 9 of 14

Page 8 of 13
2012 U.S. Dist. LEXIS 90294, *22

fact that past and future class members receive the same remedies, are important factors which make class certification appropriate and class action the superior method of resolving this litigation.

### B. Settlement Approval

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). Under *Rule 23*, a class action settlement agreement must be "fair, reasonable, and adequate" in order to be approved. *Fed. R. Civ. P. 23(e)(2)*; *Petrovic*, 200 F.3d at 1148. [*23] "To determine whether a settlement satisfies these standards, the Court must consider: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 282 (D. Minn. 1997) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). Additionally, courts give "great weight" to and may "rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (citations omitted). Additionally, the court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by the agreement . . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial." *White*, 822 F. Supp. at 1417 (internal quotations and citations omitted). Settlement agreements are presumptively valid, *Little Rock School Dist. v. Pulaski Cnty. Special School Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990), particularly where "a settlement has [*24] been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors." *In re Ins. Brokerage Antitrust Litig.*, ___ F. Supp. 2d ___, 2012 U.S. Dist. LEXIS 46496, 2012 WL 1071240, at *4 (D. N.J. Mar. 30, 2012).

The present Settlement is presumptively valid, given the arm's length negotiations supervised by this Court, the extensive discovery conducted over more than three years of litigation, the substantial experience of both plaintiff and defense attorneys, and the dearth of objectors. As previously stated, the McGregor case was filed in May 2009, see McGregor Compl., and the parties have been negotiating under this Court's supervision since the MDL was transferred to Minnesota in May 2011. Raiter Final Approval Aff. ¶¶ 16-17. Indeed, the parties were engaged in settlement negotiations for more than a year before the Court's involvement. Raiter Final Approval Aff. ¶ 13. Prior to reaching a settlement, the parties conducted extensive discovery and factual investigation, participated in substantial motion practice, subpoenaed and deposed third parties, and engaged experts and analyzed the RTI F1807 systems. See, e.g., Raiter Final Approval Aff. [*25] ¶¶ 7-12. Furthermore, the parties are experienced litigators, both in class action work generally and in pipe-fitting litigation specifically. See Section III(A)(1). Finally, twenty-six objectors have surfaced out of at least 30,000 potential class members, a mere drop in the bucket. The Settlement is therefore presumptively valid.

#### 1. Merits of Case vs. Settlement Terms

Even if the Settlement were not presumptively valid, this Settlement satisfies the fairness criteria laid out by the Eighth Circuit Court of Appeals. The critical consideration is the strength of plaintiffs' case on the merits versus the amount offered in the Settlement. See *Petrovic*, 200 F.3d at 1150. In deciding on the merits, the Court need not "go beyond an amalgam of delicate balancing, gross approximations, and rough justice." *White*, 822 F. Supp. at at 1417 (internal quotation and citation omitted).

The Settlement terms here are generous, offering both Soggy and Cloggy Plaintiffs the only conceivable remedies they could expect — replacement or repair of their systems, as well as resto-

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 10 of 14

Page 9 of 13
2012 U.S. Dist. LEXIS 90294, *25

ration of property damaged by leaks. The Settlement is not a limited fund settlement, and no aggregate or per claim caps apply to class [*26] members' recovery. Additional expenses, such as attorneys' fees, administration costs, and notice costs, are all shouldered by the RTI Defendants and do not diminish class members' recovery. See Settlement Agreement ¶¶ 32, 95, 99-106, 108, 114-17; see generally Section II. While the merits of Plaintiffs' claims here are strong, the Settlement terms reflect that strength and obviate the need for lengthy litigation which would inure primarily to attorneys' benefit. The quality of settlement terms from class members' perspective, weighed against the capricious uncertainty, extensive time, and exorbitant costs inherent in complex trial litigation, merits approval of this Settlement.

### 2. The RTI Defendants' Financial Condition

No objectors argue that the RTI Defendants' financial condition should have resulted in a better settlement agreement. RTI ceased operations in early 2005. Raiter Final Approval Aff. ¶ 20. Moreover, class counsel considered the available insurance coverage, the effect of previous claims paid, and the coverage defenses raised by insurers in arriving at the current Settlement. Therefore, consideration of the RTI Defendants' financial condition also favors approval of the [*27] Settlement.

### 3. Complexity and Expense of Further Litigation

The complexity and expense of class action litigation is well-recognized. Cf. Schmidt v. Fuller Brush Co., 527 F.2d 532, 535 (8th Cir. 1975) ("[r]ecognizing that class actions place an enormous burden of costs and expense upon the parties . . ."). Moreover, as has been noted in other class action cases, the various procedural and substantive defenses likely to be argued to the hilt by the RTI Defendants, the expense of proving class members' claims, the certainty of resolution under this Settlement forecloses any subsequent appeals, and the fear that the "ultimate resolution of the action . . . could well extend into the distant future," all weigh in favor of the Settlement's approval. Snell, 2000 U.S. Dist. LEXIS 13611, 2000 WL 1336640, at *16.

### 4. Amount of Opposition to Settlement

The opposition to the Settlement has been minimal. Only three groups of Objectors filed objections with the Court, and as previously noted, only two groups appear to have any standing. Twenty-six Objectors, out of a class likely totaling more than 30,000, represents only token opposition to this Settlement. Cf. Petrovic, 200 F.3d at 1152 (approving settlement where less than 4% [*28] of class objected); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by 10% of a class "strongly favors settlement"). While not dispositive, "[t]he fact that only a handful of class members objected to the settlement similarly weighs in its favor." DeBoer, 64 F.3d at 1178.

Further, the present opposition to the Settlement lacks merit. The Florida Objectors filed nearly identical objections, finding fault with the Settlement inasmuch as it requires RTI F1807 plumbing systems to fail prior to complete replacement. See Docket Nos. 74, 75. These objections do not prove the Settlement unfair, unreasonable, or inadequate. As a compromise, the Settlement "is, necessarily, a compromise between plaintiffs, who did not win their case, and defendants, who did not lose theirs. These settlements, like all others, reflect each side's considered view of the risks of an adverse judgment and the value of buying peace." In re Airline Ticket Comm'n Antitrust Litig., 953 F. Supp. at 282. The Florida Objectors' opposition, also, does not fully comprehend the terms of the Settlement. Cloggy Objectors, for whom repair of their brass fittings has failed to restore [*29] normal water flow, are entitled to a replacement of their plumbing system before

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 11 of 14

Page 10 of 13
2012 U.S. Dist. LEXIS 90294, *29

the plumbing failure causes property damage to the house itself. Settlement ¶¶ 95, 108.

The California Objectors raise numerous contentions, all of which are spurious. As previously discussed, the California Objectors' argument that the class representatives and counsel are inadequate fails, as does their contention that a RORA claim must be advanced and a RORA remedy provided in order for this Settlement to be adequate. The California Objectors also object that the Settlement releases claims against other persons and entities (not the RTI Defendants) against whom Objectors may have valid legal claims. California Objectors fail to cite California law or precedent which would enable them to recover from other parties, and the release to which they object expressly excludes plumbers, homebuilders, contractors, or other providers whose installation caused damage "wholly unrelated to the design, manufacture, or performance of the F1807 System." Settlement ¶ 78. This objection therefore is overruled.

The California Objectors also take umbrage with the notice provided the class. Specifically, they argue that the [*30] class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing. See Raiter Final Approval Aff. Ex. E. As the Petrovic Court found, "the mailed notice provided a reasonable summary of the stakes of the litigation, and class members could easily acquire more detailed information . . . through the telephone number" and website provided in this case. Petrovic, 200 F.3d at 1153. The short and long form notices here directed class members to visit the Settlement website for more information, and the website itself contains a copy of the Settlement Agreement and this Court's preliminary approval order. See Raiter Final Approval [*31] Aff. Ex. E. "Due process requires no more." Petrovic, 200 F.3d at 1153.

Finally, the California Objectors belatedly argue that the notice to state and federal Attorneys General was deficient. [5] Here, the RTI Defendants timely mailed notice to the Attorneys General more than ninety days before the final fairness hearing, as required by CAFA. Raiter Aff. in Opp'n to Obj. Ex. A. The notice provided by the RTI Defendants on January 20, 2012, included a one-page cover letter from counsel, as well as copies of the following: (1) the class action complaint and first amended class action complaint; (2) the preliminary approval of settlement documents; (3) this Court's Amended Order Granting Preliminary Approval; (4) the proposed short and long-form notices; and (5) the Settlement Agreement, along with exhibits. Raiter Aff. in Opp'n to Obj. Ex. A. No Attorneys General have responded. See Raiter Aff. in Opp'n to Obj. ¶ 15.

Moreover, the California Objectors' contention that the cover letter of a notice mailed to Attorney Generals must set forth all the elements required by 28 U.S.C. § 1715 strains credulity and contradicts the very purpose of CAFA. Specifically, the California Objectors argue that the RTI Defendants' failed CAFA by stating "[i]t is not feasible to provide the names of all class members who reside in each state. This is not a fixed-fund settlement, so the relief provided to class members in one state will not reduce the relief available to class members in other states under the settlement." Intrepido-Bowden Decl. Ex. A. The California Objectors postulate that this statement

---

[5] The California Objectors' Objection to Motion for Final Approval Based on Inadequate and Deficient Notice [Docket No. 91] was filed on June 22, 2012, three weeks after the June 1, 2012 deadline for filing such objections. See Am. Class Certification Order ¶¶ 45-50. This Court [*32] may therefore reject it outright. See Yarrington v. Solvay Pharms., Inc., 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) ("For an objection to a settlement to be considered by the Court on the merits, it must be timely filed."). However, given that the objection also fails on its merits, the Court will also analyze the substance of the objection.

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 12 of 14

Page 11 of 13
2012 U.S. Dist. LEXIS 90294, *32

failed *28 U.S.C. § 1715(b)(7)* by declining to provide the names of class members residing in each state, and by failing to give a reasonable estimate of the number of class members [*33] per state. However, nowhere in *28 U.S.C. § 1715(b)(7)* does it state that this information must be provided in the cover letter. Here, the materials provided by the RTI Defendants' notice gives a reasonable estimate (30,000) of the number of class members. This Court finds that this suffices under CAFA, and fulfills its clear legislative intent to "provide a check against inequitable settlements" and "deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties." S. Rep. No. 109-14, 2005 WL 627977, at *35 (2005), reprinted in 2005 U.S.C.C.A.N. 3, **34. Moreover, the legislative intent stated CAFA was not "intended to allow settlement class members to walk away from an approved settlement based on a technical noncompliance . . . particularly where good faith efforts to comply occurred." Id.
Here, the parties exhibited good faith in notifying fifty-seven Attorneys General, none of whom contacted the RTI Defendants for additional information. To disprove this Settlement for what would be a technical noncompliance, as California Objectors suggest, would turn CAFA on its head.

The only case cited by either party which addresses this issue [*34] is *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal 2010). This case is remarkably different than the present scenario, in that *True* involved a settlement where twenty-five Attorneys General and one state Office of Consumer Affairs filed opposition to the initial proposed settlement. *Id.* at 1059. In response to these objections, significant changes were made to the initial proposed settlement agreement in *True*, and the revised CAFA notice was mailed only ten days before the final fairness hearing. *Id.* at 1083. Under the circumstances, the Court held such notice "cannot possibly give adequate notice to the Attorneys General in order to achieve the purposes of [CAFA]." *Id.*
Here, the initial proposed Settlement has not changed, no objections from Attorneys General and only minimal objections from class members have been filed, and all notice was timely. Therefore, *True* is inapposite, and the Court finds the RTI Defendants' notice to the Attorneys General sufficient.

The Court has considered the concerns of the various objectors, as well as the interests of absent class members and the arguments of class representatives, counsel, and the RTI Defendants, and finds this Settlement [*35] fair, reasonable, and adequate as required by *Rule 23*. [6]

## C. Attorneys' Fees

With the final approval of the class certification and the Settlement, the Court now must consider the propriety of the service awards for class representatives, as well as attorneys' fees and costs. In the Eighth Circuit, courts routinely approve service award payments to class representatives for their assistance to a plaintiff class. See, e.g., *In re Xcel Energy, Inc., Sec., Derivative, & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 for eight lead plaintiffs in securities class action); *Austin v. Metro. Council*, Civ. No. 11-3621, 2012 U.S. Dist. LEXIS 41750 [Docket No. 27] ("Order Granting Final Approval") at ¶ 48 (D. Minn. Mar. 27, 2012) [*36] (awarding $20,000 for each named plaintiff in a discrimination case class action). In this case, the class representatives have spent considerable effort in gathering information, opening up their properties for inspection and investigation, gathering documents, and assisting class counsel. The Settlement occurred before depositions were conducted of class representa-

---

[6] "We are obligated to consider a settlement in the context of contested litigation, whose result is uncertain-seldom, if ever, is a settlement the equivalent, as the Objectors seem to imply, of a 'wish list' tendered by the victorious litigant . . . . Having settled, through Court-assisted mediation, far more complex class action matters than the one presented here, we find the settlement agreement consistent with an exercise of good business judgment by all concerned." Snell, 2000 U.S. Dist. LEXIS 13611, 2000 WL 1336640, at *19.

Case 3:08-cv-00248-JAH-WVG   Document 148-4   Filed 11/08/12   Page 13 of 14

Page 12 of 13
2012 U.S. Dist. LEXIS 90294, *36

tives, and before they needed to testify at trial. Given the extent of the class representatives' performance and assistance in procuring the Settlement, the Court finds that the proposed service award of $7,500 to the McGregors and $5,000 per abode to the other class representatives is an appropriate service award.

Regarding attorneys' fees and costs, no class member has objected to the amount sought by class counsel. Aff. of Raiter in Support of Motion for Attorneys' Fees and Costs [Docket No. 90] ("Raiter Attorneys' Fees Aff.") ¶ 11. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy*, 364 F. Supp. 2d at 994. Moreover, when a defendant agrees to pay fees and costs separately from the benefit for a class, [*37] the district court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). Where, as here, class counsel has expended considerable time and effort in procuring a settlement, has independently negotiated the fee amount at arm's length with defendants, and the fee amount does not impact or diminish the total settlement received by class members, the attorneys' fees requested are appropriate. Cf. *Snell*, 2000 U.S. Dist. LEXIS 13611, 2000 WL 1336640, at *19; *DeBoer*, 64 F.3d at 1178 (affirming attorneys' fee award where most of the fee was paid by defendant and not from the class recovery). Additionally, the significant risks incurred by class counsel since 2009 with no promise of recovery or payment, the extensive experience of and substantial work performed by class counsel, and class counsel's commitment to oversee the claim process and work on this litigation for at least another five years all factor into this Court's decision that the attorneys' fees agreed upon by all parties here are appropriate. Raiter Attorneys' Fees Aff. ¶¶ 12-20. Moreover, the costs class counsel requests to be reimbursed are reasonable [*38] and appropriate. Class counsel took steps to coordinate efforts and avoid duplication, Raiter Attorneys' Fees Aff. ¶ 10, and the amount requested — $119,000 — is reasonable for a threeyear, MDL litigation. Raiter Attorneys' Fees Aff. ¶¶ 8-9. The Court therefore finds the total attorneys' fees and costs of $2.4 million reasonable and appropriate.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

> 1. The Motion for Final Approval of Class Action Settlement [Docket No. 83] is **GRANTED**; and
>
> 2. The Motion for an Award of Service Payments to Class Representatives and for an Award of Attorneys' Fees, Costs, and Expenses to Settlement Class Counsel [Docket No. 87] is **GRANTED**.
>
>> a. Plaintiffs' Counsel are awarded attorneys' fees and costs in the amount of $2.4 million.
>>
>> b. Class representatives John and Helen McGregor are awarded a collective service award of $7,500, and the remaining class representatives are awarded service awards of $5,000 per abode.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

/s/ Ann D. Montgomery

ANN D. MONTGOMERY

2012 U.S. Dist. LEXIS 90294, *38

U.S. DISTRICT JUDGE

Dated: June 29, 2012.